UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CITY OF SAN ANTONIO, TEXAS, et al. | § § | |
| Plaintiffs, | § § | |
| | § | CASE NO. SA06CA0381 OG |
| v. | § § | |
| HOTELS.COM, L.P., et al. | § § | |
| Defendants. | § § | |

## PLAINTIFFS' BRIEF IN SUPPORT OF
## ADMISSION OF TEXAS COMPTROLLER LETTERS

In response to the Court's order of October 26, 2009 (Dkt. #964), Plaintiffs provide this brief in support of admission of the Texas Comptroller letters for all purposes.

**I.      Trial Developments have Tipped the Rule 403 Balance in Favor of Admission of the Comptroller Letters for All Purposes.**

This Court initially granted Defendants' Motion in Limine precluding Plaintiffs from referencing the letters authored by the Texas Comptroller regarding hotel occupancy tax (the "Texas Comptroller Letters") on Rule 403 grounds,[1] noting that the jury might be confused by the letters and that the jury would have a broader set of facts than was presented to the Comptroller. (Sept. 30, 2009 Order, at 2-3 (Dkt. #870))  After several defense witnesses testified

---

[1] Although Defendants also objected that the Comptroller letters are hearsay, this Court did not grant their motion on this basis.  That decision was correct.  The Texas Comptroller's letters are not hearsay because they fall within the hearsay exceptions set forth at Federal Rule of Evidence 803(8), which allow the admission of "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies setting forth (A) the activities of the office or agency; or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report . . . , or (C) in civil actions and proceedings . . ., factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." FED. R. CIV. P. 803(8); *see Baldwin v. Rice*, 144 F.R.D. 102, 104 (E.D.Cal. 1992) ("The admission of administrative reports before . . . juries is . . . commonplace.").

1

that they had no prior notice regarding their liability for tax on the markup, this Court reconsidered its ruling "[d]ue to the manner in which evidence has developed in this case" and allowed Plaintiffs to use the Texas Comptroller letters to impeach Defendants' representatives on the issue of notice or knowledge.  (Oct. 7, 2009 Order at 1 (Dkt. #914))

The Court also ruled that the Texas Comptroller Letters were "a proper subject for cross examination" of Defendants' expert Scott Anderson, who testified in this case and provided his opinion on the merits of the letters themselves.  (Sept. 28, 2009 Order at 4 (Dkt. #854))  Now, at the close of trial, the Court has asked for briefing on whether the jury should be allowed to consider the Texas Comptroller Letters during deliberations.  (Oct. 26, 2009 Order at 1 (Dkt. #964))  As a result of the testimony offered by both parties in this case, and due to the manner in which the evidence in this case has been presented, there is no question that the jury should be allowed to consider the Texas Comptroller Letters during deliberations and that the letters should be admitted for all purposes and treated like any other evidence in this case.

Of particular note is the fact that Defendants were provided an opportunity to stipulate as to when each was on notice of the Texas Comptroller Letters, which would have avoided the need for much of the testimony on this issue, but Defendants chose to decline that offer and to challenge the merits of the Texas Comptroller Letters head-on.  Consequently, Defendants' liability expert Mr. Anderson was cross-examined about the Texas Comptroller Letters and his sworn opinion regarding the merits of their conclusions.  Notably, Plaintiffs had initially sought to exclude Mr. Anderson's testimony because he had admitted in his deposition that the Texas Comptroller Letters were relevant to his opinion, yet he had not reviewed them.  (*See* Exh. A, Trial Tr. Oct. 22, 2009, at 20:12-25)  The Court ruled that Mr. Anderson's failure to review the

2

letters went to the weight of his opinion and that he could be fully cross-examined about this at trial.  (Sept. 28, 2009 Order at 4 (Dkt. #854))  At trial, Mr. Anderson testified that he had subsequently (post-deposition) reviewed the letters, and he was quick to offer his opinion that the letters did not change his expert opinions in the slightest.  (*See* Exh. A, Trial Tr. Oct. 22, 2009, at 21:1-22)  In fact, Mr. Anderson offered his affirmative opinion that the Comptroller reached "inaccurate conclusions."  (*Id*. at 21:23-22:2)  Mr. Anderson explained at length that the basis for this opinion is his disagreement with the facts that were presented to the Comptroller by the Defendants and others.  (*E.g*., *id*. at 29:21-30:3; 31:15-34:21; 35:21-37:20; 42:3-19)

Defendants then chose to call the author of the Comptroller letters, Mr. Dillard, in an attempt again to elicit testimony that the letters reach the wrong conclusion.  The sole subject matter of Defendants' questioning of Mr. Dillard was the Comptroller Letters.  Most of Defendants' questions to Mr. Dillard concerned the facts upon which each of the Comptroller Letters was based.  (*See* Exh. H, Trial Tr. Oct. 23, 2009 at 23:9 - 28:24; 35:21 - 44:17; 68:4-16)  Mr. Dillard was fully examined by Defendants regarding whether and to what extent the letters apply to other taxpayers such as Defendants.  (*E.g.*, *id.* at 44:18-46:22)  This questioning served to eliminate any danger of jury confusion regarding their letters, their factual basis, and the applicability of the letters to taxpayers like Defendants.

      **A.**    **It is the Province of this Court to Determine the Admissibility of the Texas Comptroller Letters.**

It is within this Court's broad discretion to admit the Texas Comptroller's Opinions for all purposes.  *U.S. v. Abel*, 469 U.S. 45, 54 105 S.Ct. 465, 83 L.Ed.2d 450 (1984) ("A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules."); *see also U.S. v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007) ("we will not lightly

second-guess a district court's decision to admit relevant evidence over a Rule 403 objection.... [A] district court's decision on Rule 403 grounds is disturbed 'rarely.'").

Rule 403 is a balancing test, and to exclude the letters, their probative value must be *substantially* outweighed by the danger of *unfair* prejudice, confusion of the issues, or misleading the jury.  Even Defendants' own expert witness admitted that the Texas Comptroller Letters are relevant and probative on the issue of control.  (*See* Exh. A, Trial Tr. 21:14-20; 20:12-15)  As the Court already found when it allowed Plaintiffs to use the letters for impeachment purposes, the manner in which the evidence has developed in this case has changed the balance.  Defendants chose to: (1) not stipulate to notice; (2) to have their expert review the letters post-deposition; (3) to have their expert offer an affirmative opinion that the factual basis for the letters, and therefore the conclusion reached in the letters, is wrong; and (4) to call the author of the letters to the stand.  Defendants therefore have tipped the balance in favor of admitting the Texas Comptroller Letters for all purposes, as all of this testimony means that it is no longer unfair to Defendants to admit the letters, and this abundance of testimony from *Defendants'* expert and from a witness that *Defendants* called has ensured that the jury will not be confused or misled.

In fact, it would constitute unfair prejudice to Plaintiffs to not admit the letters and/or to not allow the jury to consider the letters during deliberations.  The jury has already heard a full explanation of the letters, the basis for them, and the reasons the conclusions are allegedly wrong from the Defendants' liability expert.  ***At a minimum, the jury should be allowed to read the letters in the jury room so that it may appropriately weigh the credibility of Defendants' expert testimony.***  Because Defendants opened the door to extensive testimony on the letters, and for

4

the reasons explained below, the letters should be admitted for all purposes, and the jury should be instructed to consider the letters to the same extent it would consider any other evidence in this case. *See Green v. Louisiana Casino Cruises, Inc.*, 294 F.Supp.2d 870 (M.D. La. 2003) (holding that the Louisiana Department of Labor's determination regarding the claim for which the plaintiff alleged she was fired was "relevant to be considered with all of the other evidence in the case in determining the validity of plaintiff's claim or defendant's defense" and instructing the jury that it "may consider the ruling together with all of the other evidence in the case" but that it was "not bound by the . . . ruling.").

> **B.    The Comptroller Letters Constitute Plaintiffs' Best Evidence of Defendants' Notice and Knowledge with respect to Plaintiffs' Conversion and Punitive Damages Claims.**

The Texas Comptroller Letters are highly relevant to Plaintiffs' punitive damages and conversion claims because they show Defendants' knowledge dating back to 2002 that they owed tax on the retail rate. (Sept. 30, 2009 Order, at 2 (Dkt. #870) (noting that "Defendant's prior knowledge may be pertinent to Plaintiffs' claims for punitive damages under conversion") More specifically, the letters are relevant to show knowledge on the part of Expedia dating back to December 2002 (and on the part of each of the other Defendants as of the date they first read the letters, as established by the testimony of each Defendant's representative(s) and the answers provided by each Defendant in their sworn interrogatory answers) that it was deemed to "control" hotels in the state of Texas and that hotel taxes were due on the markup. Expedia's (and each other Defendant's) knowledge that hotel taxes were due, and its failure to pay those taxes, gives rise to a claim for punitive damages.

5

Punitive damages require a showing of gross negligence or malice, which is defined as "specific intent by the Defendants to cause substantial injury or harm." TEX. CIV. PRAC & REM C. 41.001(7). In connection with a conversion claim, "malice" is the "knowing conversion of another's property when the defendant knew or should have known it had no legal right to the property." *Kinder Morgan North Texas Pipeline, L.P. v. Justis*s, 202 S.W.3d 427, 448 (Tex. App. – Texarkana 2006, no pet.).

In *Farmers & Merchants National Bank v. Bryan,* 902 F.2d 1520 (10th Cir. 1990), the new owners of a bank brought suit against two former directors, alleging that they made loans in excess of lending limits and imprudently made other loans. *Bryan*, 902 F.2d at 1522. The jury found against the defendants, and further found they engaged in the conduct knowingly. *Id.* Defendants challenged this verdict in part on the grounds that there was not sufficient evidence of the knowing nature of the conduct. *Id.* Plaintiffs had produced reports from the Office of the Comptroller of the Currency that "were highly critical of the lending practices at [the Bank] during the period in which the loans at issue were made." *Id.* at 1523. The Plaintiffs also produced a witness who testified that "the board of directors, including [defendants], reviewed these reports and approved written responses thereto." *Id.* On this basis, the Tenth Circuit concluded that "these reports gave the entire board of directors at least constructive notice of [the bank's] unsound lending practices" and therefore "plaintiffs clearly raised a fact issue as to the outside directors' knowledge." *Id.*

The defendants challenged the admissibility of the reports to the jury "on the grounds that they were hearsay and that their prejudicial effect outweighed any probative value." *Id.* The Tenth Circuit overruled these objections, noting that the reports were exempted from hearsay as

public reports under Fed R. Evid. 803(8)(C).  *Id.*  As to prejudice, the Tenth Circuit stated "any prejudicial effect of admitting these reports and the accompanying testimony of plaintiffs' expert was plainly outweighed by their probative value on, *inter alia*, the issue of the outside directors' knowledge." *Id.* at 1524.

This is the exact situation presented with regard to the Texas Comptroller letters.  Like the plaintiffs in *Bryan,* Plaintiffs here seek to establish the knowledge of Defendants through documents.  Just as in *Bryan,* these documents constitute admissible evidence which establishes that Defendants' failure to pay the tax was knowing conduct sufficient to warrant punitive damages.

II. **The Court's September 30, 2009 Order on Defendants' Motion in Limine precluded Plaintiffs from offering at trial much of the evidence that they intended to use to prove notice.**

In its September 30, 2009 Order on Defendants' Motion in Limine (Dkt. #870), the Court limited Plaintiffs in what they could introduce to the jury to prove Defendants' notice as it relates to their conversion and punitive damages claim.  In that order, the Court ruled that Plaintiffs could not make any reference to any "reserve" that Defendants had established for hotel occupancy tax liability.  (Dkt. #870 at 2)  Plaintiffs wanted to introduce this evidence not to show liability, but to show that Defendants had prior knowledge that hotel occupancy taxes were being underpaid, which is relevant to their claim for conversion and punitive damages.  The Court agreed; but, the Court nevertheless granted Defendants' motion stating that "[w]hile Defendants' prior knowledge may be pertinent to Plaintiffs' claim for punitive damages under conversion, ***they will need to rely on other evidence to prove their claim.***"  (Dkt. #870 at 2)  In that same order, however, the Court further prevented Plaintiffs from referencing the other

7

evidence that they intended to use to prove Defendants' notice. In particular, the Court precluded mention of the Texas Comptroller Letters (which are the subject of this brief); along with statements made by Defendants' accountants Deloitte and Touche ("Deloitte") to Defendant Travelweb[2] that it believed that hotel occupancy taxes were due on the markup or margin as early as December 2002. ((Dkt. #870 at 3); *see also* Exh. B, at 6, (P-22) (Dec. 3, 2002 Deloitte memo to Travelweb stating: "[t]herefore, it appears that Travelweb should pay tax to the hotel/lodging provider based upon its contracted 'purchase' rate, and remit applicable taxes on its total markup amount and service/transaction fees."); Exh. C, at 4, (P-26) (Mar. 3, 2003 Deloitte memo to Travelweb stating: "[p]ursuant to [Texas] letter rulings 200208379L and 200212648L, Travelweb's mark-up would appear to be subject to Texas HOT."))  The Court also precluded Plaintiffs from referencing the deliberations of the Travelweb Board of Managers where they discussed in 2002 their decision to begin collecting and remitting hotel occupancy taxes in select jurisdictions, as well as e-mails among Travelweb's executives discussing the board's conclusion. ((Dkt. #870 at 4); *see also* Exh. D, at 2, (P-1708) (Dec. 4, 2002 Board of Managers Meeting Minutes stating that: "[t]he Board directed the Company [Travelweb] to implement a fee calculated to cover any potential tax liability and to work with its auditors [Deloitte] to define the jurisdictions which require the Company to remit taxes."); Exh. E, (P-1709) (Dec. 9, 2002 e-mail from C. Smith [V.P. of Finance] to board members [including, Pegasus] stating that: "[t]he consensus at the board meeting last Wednesday was that we begin collecting enough to cover the tax on the mark up and begin selectively remitting, with guidance from Deloitte. I had shared that this was the direction that you, collectively, were leaning."))  The Court's rulings on

---

[2] In 2004, Priceline acquired Travelweb, thus imputing any knowledge Travelweb had on this issue to Priceline.

Defendants' Motion in Limine therefore left Plaintiffs with very little by which they could prove Defendants' notice.

During the course of the trial, Plaintiffs have also been precluded from introducing other evidence that Defendants' were on notice since as early as 2002 that hotel occupancy tax was due on Defendants' margin or markup. For instance, Plaintiffs sought to introduce evidence that in 2002 Pegasus (Travelweb's "tax matters partner," part-owner, and board member) believed and informed Travelweb that Travelweb should collect and remit hotel occupancy tax on the full retail amount Travelweb charged the customer. (*See* Exh. F (P-896) (Aug. 7, 2002 e-mail from C. Smith (Travelweb V.P. of Finance) stating "Robert, Pegs [Pegasus] is our tax matters partner--we want to keep them in the loop and lean on them . . . whenever possible . . . ."); *see also* Exh. G, at 34 (P-1703) (Apr. 5, 2002 Pegasus Project Issue Log ("Pegasus believes that it is appropriate for HDS [Travelweb] to collect any % based taxes on the selling price (not buying) and then turn over all taxes collected to the property (with the buy price room payment . . . .")))  Plaintiffs attempted to introduce this evidence through the deposition testimony of Tom Hala, a former Travelweb consultant and executive, but Defendants challenged Plaintiffs' offering and the Court ruled that Mr. Hala's testimony on this topic and the corresponding document were excluded over Plaintiffs' argument that Pegasus' statements were not hearsay and went to the issue of notice. (*See* Oct. 16, 2009 Order (Dkt. #939))  Plaintiffs also sought to enter evidence that the state of Texas has instituted audit proceedings against Defendants for failure to pay hotel occupancy tax on the Texas state hotel occupancy statute, but that too was disallowed by the Court. (Exh. H, Trial Tr. Oct. 23, 2009 at 61:18-62:16); *see also* September 30, 2009 Order on

9

Defendants' Motion in Limine, at 1 (Dkt. #870) (granting Defendants' motion in limine precluding Plaintiffs from referencing decisions from other courts or administrative agencies))

Consequently, the best evidence that Plaintiffs have that Defendants were on notice since 2002 that hotel occupancy taxes were due in Texas jurisdictions is the Texas Comptroller Letters. Although the Court originally granted Defendants' Motion in Limine on this issue, the Court reconsidered its ruling once the evidence in the case began to develop. As a result, the Court allowed the testimony of Steve Ednie, Dan Manley, Patrick McCown, and Thomas D'Angelo[3] on this topic. To rebut the testimony Plaintiffs elicited from these witnesses, Defendants called their expert, Scott Anderson, who testified that although the Texas Comptroller Letters would be relevant to his opinion, they did not change his conclusions because they were substantively incorrect. (*See* Exh. A, Trial Tr. 21:23-22:2) Defendants then sought to build upon Mr. Anderson's testimony by calling Donald Dillard, the author of the Texas Comptroller Letters, to the stand to cross examine him and discredit the value of the Texas Comptroller Letters—not just on whether they were sufficient to provide Defendants notice, but on their substantive value as well.

Regardless of Mr. Anderson's and Mr. Dillard's testimony, the fact remains that the Texas state hotel occupancy statute mirrors the San Antonio city ordinance on this issue. (Exh. H, Trial Tr. at 63:4-10) ("The Court: Okay. I'll not let the defendant raise the issue of the Orange County lawsuit. This lawsuit clearly involves a different ordinance. The comptroller

---

[3] Mr. D'Angelo's testimony also referenced a distinct Deloitte draft memorandum issued to Priceline in 2003 that stated that it believed that "generally" hotel occupancy tax was due on Priceline's markup. This Deloitte draft memorandum differs, however, from the other two Deloitte memorandums issued to Travelweb which were the subject of the Court's Order on Defendants' Motion in Limine and which have not been offered into evidence in this case on that basis.

letters are more a response to the San Antonio--not San Antonio, but to the state statute which mirrors the language closely more aligned with the San Antonio ordinance. Defendants' objection--rather Plaintiffs' objection is noted and sustained. Anything else?") This is highly relevant for several reasons. As Defendants plainly stated in their Motion for Summary Judgment on Plaintiffs' Claims, and echoed during the course of this trial, they were basically unaware that San Antonio's hotel occupancy tax ordinance was arguably applicable to them, and that the filing of the lawsuit was the first inkling they had ever had that anyone believed they owed the tax in San Antonio. (*See, e.g.*, Def. Mot. for Summary Judgment on Plaintiffs' Claims, at 1 (Dkt. #593) ("Until it filed this lawsuit, San Antonio neither audited Defendants nor told Defendants that San Antonio believed their services were subject to hotel occupancy tax.") Although Defendants have somewhat retreated from this position in light of Mr. Anderson's testimony that Defendants' counsel, Cynthia Ohlenforst, had knowledge of San Antonio's position prior to the lawsuit being filed, the fact remains that in the years between 2002 and 2006, Defendants were on notice that their business practices were subject to hotel occupancy taxes in Texas jurisdictions —including San Antonio.

Defendants' knowledge of their potential liability as a result of the Texas Comptroller Letters is important in connection with two issues. Most importantly, it is directly relevant to Plaintiffs' conversion claim. Plaintiffs have alleged as an independent cause of action that Defendants are converting Plaintiffs' tax funds—*i.e.*, that Defendants are collecting taxes on the room markup and service fees, but simply pocketing these amounts rather than remitting them as required. Because Defendants are doing this (and have been doing this since 2002) in light of the

11

position taken in the Texas Comptroller Letters, punitive damages on Plaintiffs' conversion claim is appropriate.

The Texas Comptroller Letters are also necessary to rebut the arguments made by Defendants during this trial that Plaintiffs have blindsided them with this litigation, and that they were unaware that prior to this litigation that San Antonio believed that they were subject to this tax. Defendants have suggested through their questioning of witnesses like Ben Gorzell that this lawsuit was a fabrication of San Antonio's lawyers and that nobody thought that San Antonio's hotel occupancy tax applied to them before suit was filed. (Exh. I, Trial Tr. at 20:16-31:5) The Texas Comptroller Letters speak to the contrary. They show that as far back as 2002, Defendants were being told that based upon the language of the Texas state hotel occupancy tax statute (which mirrors the San Antonio city ordinance) they owed taxes on the retail rate that they charged customers for the rooms they sold. Defendants' knowledge of the state's position and corresponding failure to pay the tax for the ensuing seven years is therefore highly relevant to challenge that assertion.

The existence of the Texas Comptroller Letters, and Defendants' knowledge of their existence as far back as 2002, is sufficient to put Defendants on notice that, at a minimum, the state of Texas' taxing authority believed that they were underpaying hotel occupancy tax based on a state statute almost identical to the one enacted by the city of San Antonio.

### III.    Conclusion

For the foregoing reasons, Plaintiffs respectfully request the Court admit the Texas Comptroller Letters for all purposes.

Dated:  October 27, 2009

Respectfully submitted,


By:   /s/ Gary Cruciani
      Steven D. Wolens
      Texas Bar No. 21847600
      Gary Cruciani
      Texas Bar No. 05177300
      Michael P. Fritz
      Texas Bar No. 24036599

MCKOOL SMITH, P.C.
300 Crescent Court
Suite 1500
Dallas, Texas 75201
(214) 978-4000
(214) 978-4044 (Fax)

William T. Reid, IV
Texas Bar No. 00788817
DIAMOND MCCARTHY LLP
Bridge Point Parkway, Suite 400
Austin, Texas 78730
(512) 617-5200
(512) 617-5299 (Fax)

Michael Bernard, Esq.
Texas Bar No. 02211310
OFFICE OF THE CITY ATTORNEY
City Hall, Third Floor
100 South Flores
San Antonio, Texas 78205
(210) 207-8944

Laura J. Baughman
Texas Bar No. 00791846
BARON & BUDD, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, Texas 75219
214-521-3605
214-520-1181 (Fax)

13

Frank Herrera, Jr., Esq.
Texas Bar No. 09531000
River Towers
111 Soledad Street, Suite 1900
San Antonio, Texas  78205-2297
(210) 224-1054
(210) 228-0887 (Fax)

**ATTORNEYS FOR PLAINTIFFS**

# CERTIFICATE OF SERVICE

I certify that on the 27th day of October, 2009, the above document was served via ECF filing, email and/or regular U.S. Mail and/or facsimile to the following:

Ricardo G. Cedillo
rcedillo@lawdcm.com
Mark W. Kiehne
mkiehne@lawdcm.com
Leslie J. Strieber, III
lstrieber@lawdcm.com
DAVIS, CEDILLO & MENDOZA
McCombs Plaza
755 E. Mulberry Avenue, Suite 500
San Antonio, Texas  78212

Karen A. Valihura
kvalihur@skadden.com
Randolph K. Herndon
rherndon@skadden.com
SKADDEN, ARPS, SLATE,
       MEAGHER & FLOM LLP
One Rodney Square
Wilmington, Delaware 19899

Celso M. Gonzalez-Falla
celso.gonzales-falla@skadden.com
SKADDEN, ARPS, SLATE,
       MEAGHER & FLOM LLP
1000 Louisiana Street, Suite 6800
Houston, Texas  77002

Stacy Horth-Neubert
Stacy.horth-neubert@skadden.com
SKADDEN, ARPS, SLATE,
       MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071

James P. Karen
jkaren@jonesday.com
Tamara Marinkovic
tmarinkovic@jonesday.com
Deborah S. Sloan
dsloan@jonesday.com
Kelly Stewart
kellystewart@jonesday.com
JONES DAY
2727 North Harwood Street
Dallas, Texas  75201

Stacy S. Russell
stacy.russell@khh.com
KELLY HART & HALLMAN LLP
1000 Louisiana, Suite 4700
Houston, Texas  77002

Brian S. Stagner
brian.stagner@khh.com
J. Chad Arnette
chad.arnett@khh.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas  76102

Elizabeth B. Herrington
eherrington@mwe.com
Joshua G. Herman
jherman@mwe.com
Jeffrey A. Rossman
jrossman@mwe.com
Nicholas Berg
nberg@mwe.com
MCDERMOTT WILL & EMERY LLP
227 West Monroe
Chicago, Illinois 670606-5096

/s/      Gary Cruciani