UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **CITY OF SAN ANTONIO, et al.,** § | | |
| § | | |
| **Plaintiffs,** § | | |
| § | | |
| v. § | **CASE NO.  SA06CA0381 OG** | |
| § | | |
| **HOTELS.COM, L.P., et al.,** § | | |
| § | | |
| **Defendants.** § | | |

## DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF RULE 52(B) MOTION TO AMEND FINDINGS OF FACT AND CONCLUSIONS OF LAW IN LIGHT OF TEXAS APPELLATE COURT DECISION

At the conclusion of the hearing on May 3, 2012, the Court invited supplemental briefing on the issue of how the decision in *City of Houston* affects the rulings of this Court.[1]  Defendants respectfully submit, as set forth below and in their prior briefing, [Dkt.# 1111 and 1122], that *City of Houston* is binding on this Court because there is no "persuasive data" demonstrating that the Supreme Court of Texas would decide the matter differently.

Because there is no persuasive data to the contrary, Plaintiffs resort to wholesale mischaracterizations of the *City of Houston* decision, going so far as to claim the court of appeals refused even to hear the City of Houston's arguments and ignored fundamental rules of statutory construction.  None of this is true.  Worse still, Plaintiffs have gone back to distort the rulings and issues in *this* case, contending, for example, that the City of Houston's ordinance is "materially different" than the other ordinances at issue here – despite prior arguments, on the record, that Houston's ordinance is "virtually identical" to the others.

The best way to address Plaintiffs' arguments is simply to examine them one at a time in light of what the *City of Houston* opinion actually states.  Almost nothing Plaintiffs say about the

---

[1] *City of Houston et al. v. Hotels.com et al.*, 357 S.W.3d 706 (Tex.App.—Houston [14th Dist.] 2011, pet. filed), a true and correct copy of which is attached hereto as Exhibit A.

134949v1

decision is true. Similarly, the best way to address Plaintiffs' arguments about the *Erie* doctrine is to compare their views to the published case law from the Fifth Circuit and United States Supreme Court. In the end, Defendants respectfully submit it would be reversible error for the Court not to modify its Findings of Fact and Conclusions of Law in accordance with the *City of Houston* decision.

I.   **Myth 1: The Court of Appeals' Decision is Entitled to No Deference.**

Plaintiffs want to couch *Erie* as some sort of discretionary doctrine. It is not. The Fifth Circuit has instructed that federal courts must "ordinarily defer to the holdings of lower appellate courts in the absence of guidance from the highest [state] court."[2] The only exception is if a federal court is "convinced by other persuasive data" that the state supreme court would decide the matter differently.[3] The role of the federal court in this process is to "apply existing state law, not to adopt innovative theories for the state."[4]

As Defendants mentioned at the hearing, the United States Supreme Court's decision in *Field* is instructive.[5] There, the Supreme Court reversed the Second Circuit for not following two intermediate state court opinions interpreting a state statute:

> An intermediate state court in declaring and applying the state law is acting as an organ of the State and *its determination, in the absence of more convincing*

---

[2] *Holden v. Connex-Matalna Management Consulting GMBH, Etc.,* 302 F.3d 358, 364 (5th Cir. 2002); *accord West v. Am. Tele. & Telegraph Co.,* 311 U.S. 223, 236-37 (1940); *Fidelity Union Trust Co. v. Field,* 311 U.S. 169, 178 (1940); *Six Companies of Cal. v. Joint Hwy. Dist.,* 311 U.S. 180, 188 (1940); *Cerda v. 2004-EQR1 L.L.C.*, 612 F.3d 781, 794 (5th Cir. 2010); *Hamilton v. Segue Software*, 232 F.3d 473, 479 (5th Cir. 2000).

[3] *Cerda*, 612 F.3d at 794 ("In making an *Erie* guess, we defer to intermediate state appellate court decisions, unless convinced by other persuasive data that the higher court of the state would decide otherwise."); *see also Barfield v. Madison Cnty., Miss.*, 212 F.3d 269, 272 (5th Cir. 2000); *Lamarque v. Mass. Indem. & Life Ins. Co.*, 794 F.2d 194, 196 (5th Cir. 1986).

[4] *Holden,* 302 F.3d at 365 (reversing district court for failing to follow state law as announced in intermediate appellate decision); *accord Sawyer v. E.I. DuPont de Nemours*, 2012 WL 1372143, *3-4 (5th Cir. April 20, 2012) ("Lacking a Texas Supreme Court case directly on point. . . , [w]e defer to the Texas appellate courts.").

[5] *Field*, 311 U.S. at 178.

> *evidence of what the state law is, should be followed by a federal court in deciding a state question*.[6]

The Supreme Court cautioned that a federal court is "not free to reject" state court decisions "merely because [they have] not received the sanction of the highest state court, even though it thinks the rule is unsound in principle or that another is preferable."[7]

Plaintiffs are also wrong to suggest that *City of Houston* can be ignored simply because it is subject to potential review by the Texas Supreme Court. The Fifth Circuit's decision in *Cerda* ends that argument.[8] In *Cerda*, the Fifth Circuit was required to make an *Erie* guess of Texas law based on two conflicting appellate court decisions, one of which was still subject to review by the Texas Supreme Court. Importantly, the Fifth Circuit did not summarily discard the decision on that basis, as Plaintiffs propose, but rather undertook a rigorous comparison of both decisions to determine which one most likely represented the Texas Supreme Court's view of the issue.[9] Here, of course, no other Texas appellate decision contradicts *City of Houston*.

At bottom, Plaintiffs are forced to snipe at *City of Houston* because they are unable to identify any "persuasive data" that would suggest a different result in the Texas Supreme Court. The court of appeals' decision is just one of many decisions on the merits in favor of Defendants in cases just like this. Defendants have won on the merits in the Sixth Circuit Court of Appeals, the Fourth Circuit Court of Appeals, the Supreme Court of Missouri, the Supreme Court of

---

[6] *Id*. Unless otherwise indicated, all emphasis to quoted material has been added.

[7] *Id.* at 178; *see also West,* 311 U.S. at 236-37; *Six Companies,* 311 U.S. at 188.

[8] *Cerda*, 612 F.3d at 794.

[9] *See id*. at 795-97. Plaintiffs propose that *Adams v. Travelers*, 465 F.3d 156, 163 (5th Cir. 2006) is contrary authority, but it pre-dates *Cerda* by four years. Further, it is an apples to oranges comparison. The issue in *Adams* was only whether the federal district court was required to reinstate the claims of an employee/plaintiff when those claims were previously dismissed after the employee/plaintiff failed to file a response or evidence to oppose a motion for summary judgment. The employee/plaintiff argued that the federal district court was required to defer to an intermediate Texas appellate court's determination, in a related case, that a fact question precluded summary judgment. The Fifth Circuit noted, rightly, that the employee/plaintiff's failure to contest the summary judgment motion in the federal court case could not later be cured simply by pointing to a fact question that existed in a state court case where ample, conflicting evidence had been filed. *Id*. at 163 & n.20.

Alabama, and more than a dozen other appellate and trial courts.[10]  Accordingly, if there is any "persuasive data" to be considered by the Court, it is all outside of Texas and overwhelmingly supports the court of appeals' decision.

## II.   Myth 2: The Court of Appeals Heard Just One Side of the Argument.

The notion that the court of appeals refused even to consider the City of Houston's arguments is absurd.  The opinion, on its face, addresses all of the arguments made by the City of Houston, many of which will be familiar to this Court:

- "[Houston and the HSA] argue that the 'cost of occupancy' is the amount that a consumer pays the OTC for a reservation."  *City of Houston*, 357 S.W.3d at 712.

- "Houston contends that the OTCs' 'plain meaning' interpretation of the tax provisions is unreasonable.  Houston argues that if the ordinance is read in accordance with its plain meaning, it produces an absurd result."  *Id*.

- "As to the resolution, Houston asserts that the OTCs' 'plain meaning' interpretation does not follow the text, but instead implies terms that the resolution does not contain."  *Id*.

- "Houston suggests that reading this provision literally would lead to an absurd result in that the tax would apply only when the hotel received payment directly from the occupant."  *Id*. at 714 n. 5.

- "Houston asserts that the ordinance cannot be read literally because *hotel* is defined in the ordinance as a 'building . . . in which the public may, for a

---

[10] The hotel tax cases where judgments have been entered, ordered or affirmed for Defendants are *Pitt County, North Carolina v. Hotels.com, L.P.*, 553 F.3d 308, 312-13 (4th Cir. 2009); *Louisville/Jefferson County Metro Gov.* v. Hotels.com, L.P., 590 F.3d 381, 385-89 (6th Cir. 2009); *St. Louis Cnty. v. Prestige Travel, Inc.*, 344 S.W.3d 708, 714 (Mo. 2011); *City of Birmingham v. Orbitz, LLC*, 2012 WL 1237686 (Ala. April 13, 2012); *City of Bowling Green v. Hotels.com, L.P.*, 357 S.W.3d 531, 533 (Ky. App. 2011); *City of Philadelphia v. City of Philadelphia Tax Review Board*, ---A.3d---, 2012 WL 310874, at *3-4 (Pa. Cmwlth. Feb. 2, 2012); *City of Goodlettsville, Tennessee v. Priceline.com, Inc.*, ---F.Supp.2d---, 2012 WL 573681, at *8-13 (M.D. Tenn. Feb. 21, 2012); *Leon County, Florida v. Expedia, Inc.*, Case No. 2009 CA 4319 (2nd Jud. Cir. Ct. May 8, 2012); *City of Orange, Texas v. Hotels.com, LP,* 2007 WL 2787985, at *5-6 (E.D. Tex. Sept. 21, 2007); *Hamilton County, Ohio v. Hotels.com, L.P.*, 2011 WL 3289274, *2-3 (N.D. Ohio July 29, 2011); *Priceline.com v. City of Anaheim*, No. JCCP 4472 (L.A. Super. Ct. Feb. 1, 2010); *City of San Diego v. Hotels.com, L.P.*, Case No. GIC861117 (L.A. Super. Ct. Sept. 6, 2011); *City of Santa Monica v. Expedia, Inc.,* Case No. SC108568 (L.A. Super. Ct. Mar. 16, 2011); *City of Columbus v. Hotels.com, L.P.*, No. 3:07-cv-02117-DAK (N.D. Ohio July 23, 2007); *City of Findlay v. Hotels.com, L.P.*, No. 3:05-cv-07443 (N.D. Ohio Nov. 18, 2010); *State v. Priceline.com, Inc.*, Case No. CJ-2010-8952 (Okla. Dist. Ct. Mar. 22, 2011) (Journal Entry).

134949v1

consideration, obtain sleeping accommodations.' According to Houston, if the ordinance is read in accordance with its plain meaning, then no taxes could be collected, because no one pays a building." *Id*. at 714 n. 6.

- "Houston argues that the cost of occupancy, as that expression is used in the resolution, is the marked-up rate that consumers pay to OTCs . . . ." *Id*. at 715.

- "Houston relies on opinions from the state comptroller interpreting the state hotel-occupancy statute." *Id*. at 716 n. 9.

- "Houston has asked us to consider the [San Antonio] findings of fact and conclusions of law that were signed on July 1, 2011 . . . . [W]e have considered the arguments and evidence presented in the class action to the extent that they overlap with those presented here." *Id*. at 717 n. 11.

- "Houston asserts that the OTCs control hotels 'for purposes of their merchant model transactions,' or 'with regard to the functions of advertising, pricing rooms, making reservations,' or 'for the purposes of collecting and remitting occupancy taxes.'" *Id*. at 717 n. 12.

Thus, there is no question the City of Houston made all of its arguments and that those arguments were fully considered. It did so at the trial court by filing its own motion for summary judgment, opposing Defendants' motion for summary judgment, and filing a motion for new trial with additional "supporting" evidence. It did so at the court of appeals by submitting 50 pages of briefing, participating in oral argument on March 22, 2012, and later moving for rehearing.[11]  Indeed, the City of Houston made many of the same arguments that Plaintiffs made here, including the weight, if any, to be given the Texas Comptroller's letter rulings (*Id*. at 716 n. 9), and the allegedly absurd results that would follow from Defendants' interpretation of the ordinances. *Id*. at 712, 714 n. 5 & n. 6.

---

[11] On December 7, 2011, the court of appeals denied the City of Houston's motion for rehearing, which argued, among other things, (1) that Defendants are tax collectors, not taxpayers; (2) that the rule of strict construction for taxing statutes does not apply in favor of Defendants; and (3) that Defendants' interpretation allows for tax evasion.

### III.     Myth 3: The Court of Appeals Applied A Single Rule of Construction and Ignored All Others.

At the recent hearing before this Court, Plaintiffs described the *City of Houston* decision as "unprecedented," claiming the court of appeals applied only a "single rule of construction" that ambiguities in taxing statutes must resolved against the taxing authority. [Dkt.# 1129, Ex. 1, p. 27]. Plaintiffs claim the court of appeals ignored all other rules of construction. [*Id*.].

At some point the question becomes whether Plaintiffs have even read *City of Houston*. Contrary to their assertion that the court of appeals failed to apply other rules of construction, the appellate court applied numerous rules of statutory construction, complete with citations to applicable Texas Supreme Court authority for each rule:

- "The same rules that govern statutory construction apply to the construction of municipal ordinances. *Mills v. Brown*, 159 Tex. 110, 114, 316 S.W.2d 720, 723 (1958)." *City of Houston*, 357 S.W.3d at 711.

- "Our primary objective is to give effect to the enacting body's intent. *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011)." *Id*.

- "The most reliable expression of such intent is the literal text of the provision. *See Alex Sheshunoff Mgmt. Servs., LP v. Johnson*, 209 S.W.3d 644, 651 (Tex. 2006)." *Id*.

- "We presume that a statute's language was selected with care and that every word and phrase was used for a purpose. *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010)." *Id*.

- "Where possible, we avoid treating any statutory language as surplusage. *Spradlin v. Jim Walter Homes, Inc.,* 34 S.W.3d 578, 580 (Tex. 2000)." *Id*.

- "We construe a statute 'according to what it says, not according to what we think it should have said.' *City of San Antonio v. Hartman*, 201 S.W.3d 667, 673 (Tex. 2006)." *Id*. at 712.

- "If a statute assigns a particular meaning to a term, courts are bound by the statutory usage. *TGS-NOPEC*, 340 S.W.3d at 439." *Id*.

- 6 -

- "On the other hand, a statute that is susceptible to more than one reasonable interpretation is ambiguous. *See In re Hourani*, 20 S.W.3d 819, 825 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding)." *Id.*

- "A taxing provision is construed strictly against the taxing authority and liberally in favor of the entity that the authority seeks to hold liable; thus, any ambiguity in the statute must be resolved in favor of the taxpayer. *See First American Title Ins. Co. v. Combs,* 258 S.W.3d 627, 632 & n. 23 (Tex. 2008); *Bullock v. Statistical Tabulating Corp.*, 549 S.W.2d 166, 169 (Tex. 1977); *Wilson Commc'ns, Inc. v. Calvert*, 450 S.W.2d 842 (Tex. 1970)." *Id.*

- "To determine which of these two figures is the 'cost of occupancy' that is subject to the taxes at issue in this case, we must begin with the words of each of the taxing provisions as the surest indicator of the enacting body's intent. *See Alex Sheshunoff Mgmt. Serv.*, 209 S.W.3d at 651." *Id.* at 713.

- "Although both the City and the Sports Authority defined the word *occupancy*, neither used the word cost as a defined term. We therefore consider the plain and common meaning of the word. *See Harris County Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009)." *Id.*

- "To identify the word's intended meaning, we must consider the enactment as a whole. *See Phillips v. Bramlett*, 288 S.W.3d 876, 880 (Tex. 2009)." *Id.*

- "When a statute assigns a particular meaning to a term, courts are bound by the statutory usage. *See TGS-NOPEC*, 340 S.W.3d at 439." *Id.*

- "And *such* in the phrase *of such room* indicates that the room for which consideration is paid on the occupant's behalf is the same room identified earlier in this provision as a room furnished by any hotel. *See Lechuga v. Tex. Employers' Ins. Ass'n.,* 791 S.W.2d 182, 185 (Tex. App.—Amarillo 1990, writ denied) (explaining that the legislature's use of the words 'such notice' in a statute demonstrated the legislature's intent to restrict the meaning of the word *notice* to refer to the same notice identified earlier in the statute)." *Id.* at 714.

Notably, many of these rules of construction are the same ones recited by this Court in its Findings of Fact and Conclusions of Law, [Dkt.# 1096, ¶¶ 123-124, 126], which Plaintiffs fully endorsed as being the "applicable rules of statutory construction" for deciding this case. [Dkt.# 1129, Ex. 1, p. 25]. So while Plaintiffs may not like the outcome that resulted from these rules of construction, there is no basis to say the court of appeals ignored them.

134949v1

### IV.   Myth 4: The Rule of Strict Construction Is Inapplicable Because Defendants Are Not "Taxpayers."

Plaintiffs also suggest the court of appeals misapplied the rule of strict construction because, the argument goes, Defendants are not "taxpayers" deserving of having ambiguities resolved in their favor. This misses the point for at least two reasons.

Foremost, the court of appeals has already held that the rule of strict construction *does* apply to efforts to enforce local hotel taxes against these Defendants.[12] The court of appeals made that determination when it first decided the case and again when it denied the City of Houston's motion for rehearing, which specifically argued that the rule of strict construction does not apply in favor of Defendants.[13] As the only appellate court in Texas to address this issue, it is this decision – not Plaintiffs' self-serving view of the law – that is entitled to deference under *Erie*.[14]

Further, there is no "persuasive data" to conclude the Supreme Court of Texas would decide the issue differently. It has long been the law in Texas that uncertainties in taxing statutes are resolved against the *taxing authority* and in favor of *whomever* is contesting the application of the tax, whether described as "citizen," "person or entity sought to be taxed," "entity sought to be held," or the disjunctive "taxpayer *or* citizen."[15] Oftentimes courts simply state that an

---

[12] *City of Houston*, 357 S.W.3d at 712, 715-16.

[13] *See supra* n. 11.

[14] *Cerda,* 612 F.3d at 794; *Barfield*, 212 F.3d at 272; *Lamarque,* 794 F.2d at 196.

[15] *See, e.g.*, *Gould*, 245 U.S. at 153 (". . . construed most strongly against the government, and in favor of the citizen"); *Bullock v. Statistical Tabulating Corp.*, 549 S.W.2d 166, 169 (Tex. 1977) (". . . against the taxing authority and liberally in favor of the person (or entity) sought to be held."); *Tex. Unemployment Comp. Comm'n v. Bass*, 151 S.W.2d 567, 570 (Tex. 1941) (same); *Harrington*, 185 S.W.2d at 137 (". . . construed most strongly against the government, and in favor of the citizen"); *Bullock v. Marathon Oil Co.*, 798 S.W.2d 353, 357 (Tex. App.—Austin 1990, no writ) (". . . against the taxing authority and liberally in favor of the entity sought to be held"); *Calvert v. Humble Oil & Refining Co.*, 381 S.W.2d 229, 232 (Tex. Civ. App.—Austin 1964, writ ref'd n.r.e.) (same); *Geomap Co. v. Bullock*, 691 S.W.2d 98, 100 (Tex. App.—Austin 1985, writ ref'd n.r.e.) (". . . against taxing authority and liberally in favor of person or entity sought to be taxed"); *Comptroller of Public Accounts v. Austin Multiple Listing Serv.*, 723 S.W.3d 163, 165 (Tex. App.—Austin 1986, no writ) (same); *First Nat. Bank of Fort*

ambiguous taxing statute must be construed against the taxing authority, without even referencing the person or entity who benefits from the rule.[16] Indeed, any other result would undermine the stated rationale for the rule – that taxing authorities ought not benefit from their own imprecise statutory language.[17]

Finally, the court of appeals is not alone in its determination that the rule of strict construction applies to efforts to impose occupancy tax responsibilities on these Defendants. No less than eight courts have reached the same conclusion, including two federal circuit courts and two state supreme courts.[18] No court has reached the opposite conclusion advanced by Plaintiffs. Nor does Plaintiffs' theory even make sense. At least on a going-forward basis, the new taxes that Plaintiffs hope to recover through this lawsuit will almost certainly be passed onto and

---

*Worth v. Bullock*, 584 S.W.2d 548, 551 (Tex. Civ. App.—Austin 1979, writ ref'd n.r.e.) (same); *Merchants Fast Motor Lines, Inc. v. Bullock*, 548 S.W.2d 478, 482 (Tex. Civ. App.—Austin 1977, writ ref'd n.r.e.) (same); *Tandy Leather*, 347 F.2d at 694-95 (". . . taxpayer or citizen").

[16] *See, e.g., Wilson Commc'ns, Inc. v. Calvert*, 450 S.W.2d 842, 844 (Tex. 1970) ("[W]e must follow the rule that the statute is construed with strictness against the taxing authority."); *Bass*, 151 S.W.2d at 570 ("[The tax statute] must be construed strictly against the taxing authority."); *Williams & Lee Scouting Serv., Inc. v. Calvert*, 452 S.W.2d 789, 793 (Tex. Civ. App.—Austin 1970, writ ref'd) ("[W]e must follow the rule that the statute is construed with strictness against the taxing authority.").

[17] *See Gould*, 245 U.S. at 153; *Worthington*, 141 U.S. at 474; *Hartranft v. Winters*, 121 U.S. 616 (1887); *Bass*, 151 S.W.2d at 570; *Tandy Leather*, 347 F.2d at 694-95; *Harrington*, 185 S.W.2d at 137.

18 *Pitt County*, 553 F.3d at 314 ("Even if we were to decide that the phrase "similar type businesses" in § 105–164.4(a)(3) is ambiguous as to its applicability to online travel companies, the County would still not prevail. North Carolina has a well-established canon of statutory construction governing ambiguity in tax statutes. . . ."); *Louisville/Jefferson County*, 590 F.3d at 388-89 ("Because the counties' interpretation of the ordinances in question is at best doubtful, we are obligated under Kentucky law to resolve the doubt in favor of the taxpayer, i.e., the OTCs."); *St. Louis Cnty.*, 344 S.W.3d at 714 ("Furthermore, because taxing statutes must be construed strictly, and taxes are not to be assessed unless they are expressly authorized by law, this Court will not read a tax obligation into the law where one was not clearly expressed."); *City of Birmingham*, ---So.3d.---, 2012 WL 1237686 *3 ("In addition, if there were any ambiguity, tax laws must be construed against the taxing authority and in favor of the taxpayer."); *City of Bowling Green v. Hotels.com, L.P.*, No. 09-CI-00409 (Warren Cir. Ct. Div. 1 Apr. 8, 2010) ("[I]t is the function of the judiciary to construe the statute strictly and resolve doubts and ambiguities in favor of the taxpayer and against the taxing authority."); *City of Goodlettsville*, ---F.Supp.2d---, 2012 WL 573681, at *7 ("Thus, revenue acts are to be construed most strictly against the State and in favor of the citizen."); *Leon County, Florida*, Case No. 2009 CA 4319 ('The ambiguity that is found in Florida Statute 125.0104 must be resolved in favor of the OTCs and against extending the reach of the taxing authority."); *City of Findlay v. Hotels.Com, L.P.*, 441 F.Supp.2d 855, 860 (N.D. Ohio 2006) ("The tax will be construed strictly against the taxing authority.").

134949v1

collected from the transient guest, who is unquestionably the "taxpayer" under any standard advanced by Plaintiffs.

## V. Myth 5: There Was No Factual Record in *City of Houston*.

Plaintiffs also suggest that *City of Houston* was the product of a poorly developed factual record. On the other hand, Plaintiffs cite no authority allowing this Court to do what Plaintiffs request, which is to probe the contents of the state court record and to weigh the evidence there as part of its *Erie* analysis.

But even if this were a relevant consideration, there was in fact substantial evidence before the trial court and court of appeals in *City of Houston*. Plaintiffs are flat wrong to say there was "[n]o testimony of any OTC witnesses." [Dkt.# 1129, Ex. 1, p. 23]. At the time the trial court granted summary judgment for Defendants, it had before it approximately 150 pages of deposition testimony from seven of Defendants' witnesses, as well as six letter rulings from the Texas Comptroller, testimony from the author of the letter rulings (Don Dillard), and at least one of the SEC statements that Plaintiffs have trumpeted here so often. Further, in connection with its motion for new trial, the City of Houston filed over 200 pages of additional excerpts from eleven of Defendants' corporate representatives, along with eleven hotel contracts. Because the trial court denied Defendants' motion to strike this evidence, and because the City of Houston appealed both the summary judgment and the order denying its motion for new trial, such evidence was necessarily available for the court of appeals' review.[19] Indeed, the court of appeals' opinion contains a detailed factual discussion of the Defendants' merchant model

---

[19] The City of Houston filed its Notice of Appeal on April 14, 2010, appealing both "the Order Granting Defendants' Motion for Summary Judgment . . . and the Order Denying Plaintiffs' Motion for New Trial."

businesses as "drawn from the evidence in this case."[20]  As such, the notion that *City of Houston* was decided in a vacuum is simply wrong.

## VI. Myth 6: The Ordinances in *City of Houston* Were "Materially Different" Than the Ones At Issue Here.

This one is a head scratcher.  When Plaintiffs filed their motion for class certification on August 29, 2006, they included as Exhibit A the ordinances from 45 Texas cities to demonstrate that "the relevant provisions of the Cities' ordinances are ***either identical or virtually identical*** to each other."  [Dkt.# 45, p. 2].  The City of Houston's ordinance was included.  [*Id*.].  One month later, Plaintiffs filed their First Amended Complaint with a different Exhibit A, this time identifying 175 cities to be included in the proposed class. [Dkt.# 65].  Again, the City of Houston was included.  [*Id*.].  Five months later, when Plaintiffs filed their brief in support of class certification, they represented that each of the 175 cities had "***identical*** legal claims" and, "[m]ost significantly, ***the operative language*** of each city's hotel tax ordinance ***is the same***." [Dkt.# 154 p. 1].

Later, in their post-submission briefing after the hearing on class certification, Plaintiffs continued to insist that "***the relevant provisions in each ordinance are substantially similar (and in most cases identical)***, and that the liability proof and the damages calculations for each class member ***will be the same***."  [Dkt.# 218 p. 1].  Plaintiffs chastised Defendants for "nitpicking" about "inconsequential factual and legal issues," stating:

> There are ***two key legal questions*** relating to the ordinance:  "who must collect" the tax and "***what amount must be collected***."  On ***both*** questions, ***the language of all 175 ordinances is either substantially similar or identical***.

[*Id*. at p. 2].

---

[20] *City of Houston*, 357 S.W.3d at 708.

At the time of that writing, the City of Houston was, of course, one of the 175 potential class members and later became an actual class member when the Court certified the class on May 27, 2008.[21] [Dkt.# 248]. Accordingly, the following statements by the Court in its class certification order applied equally to the City of San Antonio, the City of Houston, and each of the other 173 class members:

- "The Court has conducted an independent review and analysis of **all** 175 municipal ordinances." [*Id*. at n.3].

- "Plaintiff clarified its proposed class definition and identified 175 cities with the ***same or substantially similar tax ordinances***." [*Id*. at p.8].

- "These common issues will be determined by interpreting ordinances with the ***same or substantially similar provisions*** . . . ." [*Id*. at p.9].

- "While each putative class member has its own ordinance, the claims arising thereunder, and the legal and remedial theories on which the claims are based, ***are the same***." [*Id*. at p.11].

- "Like the first 47 ordinances, the language in these [128] ordinances contain the ***same or very similar terms and definitions*** which impose a bed tax on the cost of occupancy of any room furnished by a hotel. See specifically***, the definitions of 'consideration,' 'occupancy' and 'occupant' which are the same or similar among all 175 ordinances.***" [*Id*. at p.24 and n.30].

It is therefore disingenuous for Plaintiffs to contend that the City of Houston's ordinance is somehow "materially different" from the others, [Dkt.# 1129, Ex. 1, p. 3], or that the legal effect of *City of Houston* should not apply to all class members alike. Even after the trial of this case, Plaintiffs continued to insist there should be a single outcome for all cities: "The 'anatomy' or structure of the San Antonio-Type Ordinances is identical to that of the Dallas-Type Ordinances . . . . Given that the structure of both the San Antonio-Type Ordinances and the

---

[21] At the last hearing, Plaintiffs stated inaccurately that the City of Houston opted out of the certified class in March 2007. [Dkt. 1129, Ex. 1, p. 1]. The City of Houston actually did not opt-out until at least August 12, 2008, *after* the Court certified the class, when Houston's counsel sent a certified letter to Plaintiffs' counsel requesting to be excluded from the class. A true and correct copy of the August 12, 2008 letter is attached hereto as Exhibit B.

Dallas-Type Ordinances is identical, *so too should be the result.*"[22] Plaintiffs' Prop. Findings of Fact and Conclusions of Law ¶ 109 [Dkt.# 1032]; *accord* Findings at ¶ 142 [Dkt.# 1096] ("The only divergence in the 173 ordinances is seen in the tax <u>rate</u> provisions, where the Cities set forth the rate at which the tax will be calculated.") (emphasis in original).

### VII. Myth 7: *City of Houston* Is Not Dispositive Because it Did Not Address the Issue of Control.

*City of Houston* is dispositive of the claims of *all* class members because it squarely resolves the issue of "what is taxed." While Plaintiffs now want to argue that the issue of "control" enables this case to stand on its own, separate and apart from *City of Houston*, this Court has consistently recognized that the issue of liability is a *two*-part inquiry: "who must collect the tax" and "what is taxed." The Court made that clear in its order denying Defendants' motion to dismiss,[23] its order granting class certification,[24] its summary judgment order,[25] and its

---

[22] More than disingenuous, Plaintiffs should be judicially estopped from asserting that the City of Houston's ordinance is materially different than the other class members' ordinances. The doctrine of judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding and which was adopted or accepted by the court. *See United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993), *cert. denied*, 511 U.S. 1042 (1994); *see also In re Superior Crewboats, Inc.*, 374 F.3d 330, 334 (5th Cir. 2004). The Fifth Circuit has repeatedly affirmed a district court's decision to judicially estop a party from taking positions contrary to those previously advanced. *See, e.g., Engines Sw., Inc. v. Kohler Co.*, 263 Fed.Appx. 411, 413-14 (5th Cir. 2008) (affirming decision to judicially estop plaintiff from arguing that another party should be substituted in for plaintiff at damages phase where plaintiff successfully persuaded court to enter summary judgment in its favor in liability phase); *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 294 (5th Cir. 2004) (affirming decision to estop party from arguing against application of Swiss procedural law where same party had previously represented that Swiss procedural law controlled); *Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 396-400 (5th Cir. 2003) (affirming decision to estop plaintiff from claiming defendant was manufacturer of allegedly defective product where plaintiff, in separate state court action, previously asserted another party was manufacturer); *McLean v. Phillip Morris USA Inc.*, 69 *Ergo Science, Inc. v. Martin*, 73 F.3d 595, 598-99 (5th Cir. 1996) (affirming decision to estop party from claiming interest in interpleaded funds where counsel had previously stated on the record that his client had no interest in how court disposed of funds); *Veillon v. Exploration Servs., Inc.*, 876 F.2d 1197, 1199-1201 (5th Cir. 1989) (affirming decision to estop Travelers Insurance from seeking withdrawal of registry funds where Travelers had previously asserted it had no further interest in those funds).

[23] *See* Dkt# 230, pp. 4-5 ("Just as the North Carolina court determined 'who' had the duty to collect taxes (the 'hotel operator') before determining 'what' is taxable . . . .").

[24] *See* Dkt.# 248, p. 22 ("Another liability issue under the statutory claims is 'what is taxed . . . . Again, if each city does not prove that the retail amount charged to each hotel occupant is not 'what is taxed' under the ordinances, they will not prevail on their statutory claims.").

conclusions of law.[26]  Plaintiffs, too, have freely admitted there are "***two key legal questions*** relating to the ordinance:  'who must collect' the tax and '***what amount must be collected***.'" [Dkt.# 218 p. 2].

The Court has already ruled there are no material differences among the ordinances as to the issue of "what is taxed": "The Court has reviewed all 173 City ordinances, and all of them impose a hotel occupancy tax on the consideration paid by the occupant ***for the cost of occupancy*** of a sleeping room furnished by a hotel." [Dkt.#1096, pp. 36-37].  Importantly, it was this exact measure of what is taxed ("cost of occupancy") that the court of appeals considered and found inapplicable to Defendants in *City of Houston*. *City of Houston*, 357 S.W.3d at 708 ("***The disposition of the case turns on the identification of the 'cost of occupancy' for the purposes of the ordinance and the resolution***.").

That the "cost of occupancy" is the common thread through all of the ordinances is further evidenced by the chart the Court prepared as Exhibit A to both the class certification order and the findings of fact and conclusions of law.  [Dkt.#248 at Ex. A; Dkt.#1096 at Ex. A]. Exhibit A summarizes the controlling language of each class member's ordinance as to the issues of "What is Taxed" and "Who Must Collect."  The Court's description of "What is Taxed" for the City of Houston ("Cost of occupancy of any room furnished by any hotel.") is literally the same as that of 100 other class members.  [*Id.*]  Further, the Court concluded that 128 ordinances contain the same "paid to the hotel" language.  Moreover, although the Court obviously had no reason to consider the Houston Sports Authority's provisions as to "what is taxed," any fair summary of those provisions would necessarily resemble this Court's descriptions of the

---

[25] *See* Dkt. #853, pp. 3-7 (setting forth separate discussions of "III.  The Obligation to Collect Taxes: A Control Issue" and "IV.  'What is Taxed' Issue.").

[26] *See* Dkt.# 1096, pp. 35-44 (under heading "What is taxed," Court concluded, "[t]he total retail price paid by the occupant/consumer ***for the right to occupancy*** is what is taxed under all 173 ordinances.').

remaining class members' ordinances: "cost of occupancy" or "price paid for a sleeping room."[27] The choice between the two is unimportant. As the Court stated, "While the language in the ordinances of these municipalities is not identical in every respect, they are strikingly similar and the differences, if any, appear to be mere semantics." [Dkt.# 248, p. 23].

There is simply no way around the fact that the jury's finding of "control" is not enough to impose liability on Defendants; there must be an additional determination that the compensation which Defendants retain is subject to occupancy tax. The court of appeals decided this precise issue in favor of Defendants, and nothing about "control" can change that. The court of appeals addressed this very point:

> Houston asserts that the OTCs control hotels "for purposes of their merchant hotel transactions," or "with regard to the functions of advertising, pricing rooms, making reservations," or "for the purposes of collecting and remitting occupancy taxes." Such control is not an issue. Both the ordinance and the resolution contain provisions requiring one who controls a hotel to collect and remit the taxes, ***but nothing in these collection provisions purports to change what is taxed.*****[28]**

This Court, too, commented earlier that "if each city does not prove that the retail amount charged to each hotel occupant is not 'what is taxed' under the ordinances, they will not prevail on their statutory claims." [Dkt.# 248 p. 22].

## **PRAYER**

For all these reasons and those set forth in their prior briefing, [Dkt.# 1111 and 1122], Defendants respectfully submit it would be reversible error for the Court not to modify its Findings of Fact and Conclusions of Law in accordance with the *City of Houston* decision.

---

[27] *See City of Houston*, 357 S.W.3d at 716 (quoting resolution, "There is hereby imposed a tax on the ***cost of occupancy*** of any sleeping room in a Hotel in the Authority for which the cost of occupancy is at the rate of $2.00 or more per day, and such tax shall be an amount equal to 2% of the ***price paid for the occupancy*** of a sleeping room.").

[28] *Id*. at 717 n. 12.

134949v1

Dated: May 16, 2012                         Respectfully submitted,

**DAVIS, CEDILLO & MENDOZA, INC.**

 */s/ Ricardo G. Cedillo*
Ricardo G. Cedillo
Texas Bar No. 04043600
Les J. Strieber, III
Texas Bar No. 19398000
Mark W. Kiehne
Texas Bar No. 24032627
DAVIS, CEDILLO & MENDOZA, INC.
McCombs Plaza, Suite 500
755 East Mulberry Avenue
San Antonio, Texas 78212
rcedillo@lawdcm.com
lstrieber@lawdcm.com
mkiehne@lawdcm.com
(210) 822-6666 Telephone
(210) 822-1151 Facsimile

**ATTORNEYS FOR ALL DEFENDANTS**
James P. Karen (admitted *pro hac vice*)
Texas Bar No. 11098700
Deborah S. Sloan (admitted *pro hac vice*)
Texas Bar No. 00786230
W. Kelly Stewart
Texas Bar No. 19221600
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201
jkaren@jonesday.com
dsloan@jonesday.com
kellystewart@jonesday.com
(214) 220-3939 Telephone
(214) 969-5100 Facsimile

**ATTORNEYS FOR DEFENDANTS HOTELS.COM, L.P.; HOTELS.COM GP, LLC; HOTWIRE, INC.; EXPEDIA, INC. and TRAVELNOW.COM, INC.**

Brian S. Stagner
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas  76102
brian.stagner@khh.com
(817) 878-3567 Telephone
(817) 878-9280 Facsimile

**ATTORNEYS FOR DEFENDANTS TRAVELOCITY.COM, L.P.; TRAVELOCITY.COM, INC. and SITE59.COM, LLC**

Darrel J. Hieber (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144
dhieber@skadden.com
(213) 687-5000 Telephone
(213) 687-5600 Facsimile

Karen L. Valihura (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodnet Square, P.O. Box 636
Wilmington, Delaware  19899
karen.valihura@skadden.com
(302) 651-3000 Telephone
(302) 651-3001 Facsimile

Celso M. Gonzalez-Falla
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1000 Louisiana Street, Suite 6800
Houston, Texas  77002
cegonzal@skadden.com
(713) 655-5100 Telephone
(713) 655-5200 Facsimile

**ATTORNEYS FOR DEFENDANTS PRICELINE.COM INC.; LOWESTFARE.COM INC. and TRAVELWEB LLC**

Elizabeth B. Herrington (admitted *pro hac vice*)
MCDERMOTT WILL & EMERY LLP
227 West Monroe
Chicago, Illinois 60606-5096
eherrington@mwe.com
(312) 372-2000 Telephone
(312) 984-7700 Facsimile

**ATTORNEYS FOR DEFENDANTS ORBITZ, INC.; ORBITZ, LLC; INTERNETWORK PUBLISHING CORP. (D/B/A LODGING.COM) and TRIP NETWORK, INC. (D/B/A CHEAPTICKETS.COM)**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served electronically in compliance with Local Rule CV-5(a). As such, the foregoing document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(b)(1). Pursuant to Fed. R. Civ. P. 5(a)-(d) and Local Rule CV-5(b)(2), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email and/or fax, on this the 16th day of May, 2012.

*/s/ Mark W. Kiehne*
Mark W. Kiehne
