IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CITY OF SAN ANTONIO, TEXAS, ON BEHALF OF ITSELF AND ALL OTHER SIMILARLY SITUATED TEXAS MUNICIPALITIES; | § § § § § | 5-06-CV-381-OLG |
| *Plaintiffs,* | § § | |
| vs. | § § | |
| HOTELS.COM, L.P., HOTWIRE, INC., TRIP NETWORK, INC., EXPEDIA, INC., INTERNETWORK PUBLISHING CORP, ORBITZ, LLC, PRICELINE.COM., INC., SITE59.COM, LLC, TRAVELOCITY.COM, LP, TRAVELWEB, LLC, TRAVELNOW.COM, INC., | § § § § § § § § | |
| *Defendants.* | § § | |

## REPORT AND RECOMMENDATION

**To the Honorable Chief United States District Orlando Garcia:**

This Report and Recommendation concerns the Application for an Award of Attorneys' Fees, Costs, and Reimbursement of Expenses and Memorandum in Support ("Fee Application") [#1241] filed by Plaintiff City of San Antonio, Texas on behalf of itself and other similarly situated Texas Cities (collectively, "Plaintiffs"). Plaintiffs' suit arises under Section 351.004(a) of the Texas Tax Code, and the Court has diversity jurisdiction over this case. *See* 28 U.S.C. § 1332.[1] The undersigned has authority to enter this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) [#1319].

_____

[1] Although this case is currently on appeal, "[a] district court has jurisdiction to rule on a motion for ancillary attorney's fees even after the filing of a notice of appeal with respect to the underlying claims." *Creations Unltd., Inc. v. McCain*, 112 F.3d 814, 816–17 (5th Cir. 1997).

1

After carefully considering the parties' submissions on attorneys' fees including the Fee Application and the supplement thereto [#1242], the Response [#1308], the Reply [#1315], all supporting exhibits including but not limited to the several conflicting expert opinions, and the parties' Stipulation [#1240], the undersigned recommends that the District Court **GRANT IN PART** Plaintiffs' Fee Application [#1241]. The District Court should award Plaintiffs attorneys' fees in the amount of $25,014,476.25—an enhancement of 2.5 times the base lodestar—to be borne jointly and severally by Defendants. The District Court should also award counsel for Plaintiffs ("Class Counsel") $1,750,858.57 in non-taxable expenses to be borne equally by each Plaintiff.[2] Because the enhanced lodestar represents a reasonable award of attorneys' fees, the District Court should deny Class Counsel's request to recover further enhancement of the lodestar from the common fund. Finally, the District Court should deny Plaintiffs' request for contingent appellate fees without prejudice to a renewed request provided Plaintiffs are successful on appeal.

## I.    <u>Background</u>

### A.  City of San Antonio initiated this class action against sixteen different web-based hotel booking companies for failing to remit hotel-occupancy taxes.

Over a decade ago, on May 8, 2006, Plaintiff the City of San Antonio, on behalf of itself and all other similarly situated Texas municipalities, instituted this class action against Defendants, sixteen different online-travel-booking companies (collectively, "Defendants" or "OTCs"), for collection of hotel-occupancy taxes pursuant to Chapter 351 of the Texas Tax Code and similar Texas municipal tax codes. San Antonio alleged that Defendants were statutorily obligated to pay hotel occupancy taxes on the difference between the retail price of the hotel

---

[2] The undersigned will address Defendants' objections to Plaintiffs' bill of costs [#1247] by way of separate report and recommendation.

rooms, which consumers pay, and the wholesale price Defendants pay the hotels for the contractual right to book the rooms. San Antonio also brought a common law claim for conversion, alleging that Defendants failed to submit any taxes that they have collected. San Antonio sought a declaration that Defendants have a duty to assess, collect, remit, and report hotel occupancy taxes on the total retail price paid to the Defendants by the consumer and an award of monetary damages for all occupancy taxes due and owing [#1].

**B. Defendants vigorously challenged San Antonio's claims.**

From the inception, Defendants vigorously fought the claims brought by San Antonio by filing a motion to dismiss, which challenged that applicability of the Texas Tax Code and the municipal tax ordinances and whether San Antonio properly pled a claim for conversion. The District Court denied Defendants' motion in its entirety [#166], as well as Defendants' motion for reconsideration [#230].

Defendants next heavily challenged San Antonio's motion for class certification[3], requiring San Antonio to undertake an extensive amount of pre-certification discovery concerning Defendants' business practices and the issues of damages.[4] Beginning on May 16, 2007, the District Court held a two-day evidentiary hearing on San Antonio's motion for class certification. In addition to thoroughly briefing the issues prior to the hearing,[5] both parties submitted post-

---

[3] As the District Court observed, "Defendants in this case appear to be challenging most, if not all, of the facts pertinent to a class determination" (*See* [#102] at 1.)

[4] In the time period between filing the Complaint and the class-certification hearing, the parties deposed twenty-two different fact witnesses along with two different expert witnesses. (*See* Cruciani Decl. [#1241-1] ¶¶ 24-27.) The depositions occurred in eight different cities over a five-week time period. *Id.*

[5] (*See* [#45, #55-56, #59, #88, #152, #163-64, #190].)

hearing briefs in support of their positions.[6]

On May 27, 2008, the District Court granted San Antonio's motion for class certification in its entirety, certifying a class of 175 Texas cities that fit the following definition:

> Texas cities whose ordinances contain language that requires every person owning, operating, managing, or *controlling* any hotel to collect and remit hotel occupancy taxes and whose ordinances do *not* contain administrative prerequisites to filing a lawsuit for the failure to collect or remit hotel occupancy taxes.

(*See* [#248] at 7) (emphasis in original). Only two Texas cities, Houston and Watauga, chose to opt out of the class action. Thus, the certified class included a total of 173 Cities, including San Antonio.

Less than a month after the District Court certified the case as a class action, Defendants filed a petition for permission to appeal the order. The Fifth Circuit summarily denied Defendants' request. *See* Order Denying Petition for Leave to Appeal under Fed. R. Civ. P. 23(f), *City of San Antonio v. Hotels.Com LP, et al*, No. 08-00021 (5th Cir. Jul. 3, 2008).

**C. The parties engaged in extensive discovery as well as numerous discovery disputes.**

From January 2007 and continuing through September 24, 2009, the parties deposed eighty-four different witnesses in sixteen different cities and undertook a significant amount of written discovery, which involved the production of 587,851 pages of documents and fifteen gigabytes of electronic data. (*See* Cruciani Decl. ¶¶ 32-45). Due to Defendants' aggressive discovery positions, Plaintiffs were forced to file sixteen different discovery-related motions. (*Id.*); (*see also* Ex. 3 to Cruciani Decl.) (detailing the various discovery motions filed with the Court and the Court's rulings). In addition to commonplace discovery disputes, Defendants filed

---

[6] (*See* [#217-18, #220].)

numerous motions to seal and even attempted to restrict the public's access to the class certification hearing and the trial itself. (*See* Cruciani Decl. ¶¶ 46-49) (citing to the various applicable docket entries). The parties' numerous discovery disputes, including Defendants' aggressive (and at times unfounded) claims of confidentiality[7], required significant court intervention. *Id.* (detailing the various orders entered by the District Court on motions to seal and motions to protect confidential commercial information).

**D. Class Counsel obtained extraordinary results for the class in the form of a substantial monetary award and declaratory relief after a lengthy trial.**

At the conclusion of discovery, both parties filed lengthy cross-motions for summary judgment. Ultimately, the District Court granted Plaintiffs' Motion for Partial Summary Judgment as to Defendants' affirmative defenses and denied the remainder of both motions [#853].

The case proceeded to trial on October 5, 2009 against eleven of the OTC Defendants.[8] In the course of the almost month-long trial, thirty-eight different witnesses testified and the Court admitted 152 different exhibits. (*See* [#1096] at 1-2.) On October 30, 2009, the jury returned a unanimous verdict, finding that all eleven Defendants have been or are currently "controlling hotels" under the Cities' hotel occupancy tax ordinances, a necessary prerequisite for imposing a duty under the Cities' hotel occupancy tax ordinances. The jury awarded Plaintiffs a total of $20,579,486 in damages, representing sums that "Defendants should have paid as hotel occupancy taxes on the amounts they charged for hotel transactions pursuant to the Cities' ordinances." (*See*

---

[7] For instance, in response to Defendants' claim that the class certification hearing be closed to the public, the District Court found that "Defendants have failed to show that any information at issue in this case is a 'trade secret.'" (*See* [#191] at 1.)

[8] Several non-operating companies were previously dismissed.

[#1002] at 1-3.) The jury, however, found that none of the Defendants converted tax monies belonging to the Cities. (*See* [*Id.*] at 2-3.)

Based upon the verdict, the parties submitted extensive proposed findings of fact and conclusion of law on the remaining issues and claims, as well as objections to their opponents' proposed findings and supplemental briefs and advisories. (*See* [#1022, #1024, #1037, #1039, #1083, #1085].) On July 1, 2011, the District Court entered Findings of Fact and Conclusions of law, finding that Defendants violated the hotel occupancy ordinances by failing to assess, collect, and remit hotel occupancy taxes on the retail price of the room, the amount Defendants charged consumers. (*See* [#1096] ¶¶ 232-38.) The Court granted Plaintiffs' request for declaratory relief, holding that Defendants have a duty to remit to each of the Cities the correct amount of hotel occupancy taxes on every hotel transaction. (*See* [*Id.*] ¶¶ 281-283.) And, in light of the declaratory relief award, the Court warned Defendants that "[d]amages will continue to accrue with each online transaction through the date that judgment is entered and beyond unless Defendants *immediately* begin calculating, collecting and remitting tax on the total retail amount charged to the consumer." ([*Id.*] ¶ 265.) (emphasis in original). Accordingly, the District Court ordered Defendants to immediately adjust their business practices to ensure that all taxes due and owing on post-judgment transactions were paid in accordance with the applicable ordinances and the Court's award of declaratory relief. Finally, the Court ordered the parties to meet and confer to calculate unpaid taxes through the present date. (*See* [*Id.*] ¶ 268.)

**E. The parties spent years filing post-trial motions and calculating unpaid taxes owed before the Court entered its Final Judgment.**

After the District Court entered its Findings of Fact and Conclusions of Law, both sides filed various post-trial motions including motions for clarification and to amend or correct the

District Court's findings. While the District Court denied the motions to amend [#1141, #1142], it granted Plaintiffs' motion for clarification regarding post-verdict service fees [#1133]. In granting Plaintiffs' motion, the Court clarified that the service fee is part of the total retail price paid by the consumer for the right to occupancy, and hence, it should be included in the damages calculation in accordance with the declaratory judgment. The District Court thereafter entered Amended Findings of Fact and Conclusions of Law on the service fee issue [#1144].

Pursuant to the Court's July 1, 2011 Order to confer regarding unpaid taxes through the present date, Plaintiffs' expert spent a significant amount of time analyzing three additional years of electronic transaction data to calculate penalties and interest owed. (*See, e.g.,* Leitzinger Decl. [#1242-13] ¶ 10.) Almost two years after the Court entered its Findings of Fact and Conclusions of Law, both sides provided the Court with agreed, updated damages calculations. In accordance with these calculations, on April 4, 2013, the District Court entered Final Judgment for Plaintiffs in the total amount of $55,146,489, representing the damages determined by the jury, the post-verdict damages in the amounts agreed by the parties, and the amounts of penalties and interest on the damages, as agreed by the parties [#1155]. The Court finally ordered as declaratory relief that "each Defendant is required to calculate, collect, remit, and report to the Cities occupancy taxes on the total retail amount charged to its customers, including mark-up/margin, breakage, extra person fees, and service fees . . . on an ongoing basis from the date of this Final Judgment." (*See* [#1155] ¶ 4.)

F.   **The parties engaged in considerable post-judgment motion practice, and three years later, the Court entered an Amended Final Judgment for a total damages award of $84,123,089.**

One month after the District Court entered Final Judgment, Defendants filed a thirty-five page renewed motion for judgment as a matter of law or, alternatively a new trial, which the Court

denied [#1183].[9]  Plaintiffs subsequently filed a motion to amend the judgment regarding the calculation of penalties [#1200].  On January 22, 2016, the District Court granted Plaintiffs' motion to amend in part, holding that Plaintiffs were entitled to a fifteen percent penalty under the Texas Tax Code, even if the corresponding municipal ordinance does not have a penalty provision or provides for a lower penalty [*Id.*].  However, the District Court found that "stacking" penalties was impermissible [*Id.*].  Given the passage of time since the original Final Judgment, the District Court once again directed the parties to confer with their experts to re-calculate penalties as well as delinquent taxes owed to date with interest [*Id.*].

On April 11, 2016, the Court amended its Final Judgment to account for all tax, penalties, prejudgment interest and post-judgment interest owed by Defendants to date for a total damages award of $84,123,089 [#1219].  On May 6, 2016, almost ten years after San Antonio first initiated suit, Defendants filed their Notice of Appeal, which Plaintiffs cross-appealed [#1223, #1224].

### G. Plaintiffs are requesting attorneys' fees in the amount of $43,199,878; Defendants argue for a substantial reduction.

On July 25, 2016, Plaintiffs, filed the instant Fee Application, seeking $43,199,878 in attorneys' fees for successfully prosecuting this action [#1241].  Plaintiffs argue that the Court should calculate the lodestar at $10,799,970 and apply a multiplier of four-times the lodestar to account for the "remarkable nature of this case" [*Id.*].  Should the Court decline to apply the requested multiplier, Class Counsel argue that the Court should award the difference out of the class recovery.  Plaintiffs further request that the Court award them reasonable attorneys' fees for the prospective appeal of this case.  Finally, Class Counsel seek $1,765,195.55 in expenses out of

---

[9] Defendant Priceline also filed a Motion to Amend or Make Additional Findings of Fact, which the Court denied [#1184].

the common fund on the grounds that such expenses are not recoverable by statute and would typically be billed to paying clients.

Defendants, on the other hand, strongly oppose the amount of attorneys' fees requested [#1308]. While Defendants have stipulated to the amount of hours expended by Class Counsel in this litigation as reasonable [#1240], Defendants contend that the requested lodestar should be reduced,[10] asserting that a large portion of paralegal time is non-compensable as it was clerical and administrative in nature, and that Class Counsel's hourly rates far exceed the prevailing rates in the community. Defendants further argue that no enhancement is applicable because any factors that might otherwise justify an enhancement are subsumed within the Court's lodestar analysis. Finally, Defendants argue that the Court should deny Plaintiffs' request for contingent appellate fees.

## II.     Legal Standard

In diversity actions, state law controls both the award of and reasonableness of attorneys' fees. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Generally under Texas law, attorneys' fees and litigation expenses may not be recovered absent statutory or contractual authorization. *Great Am. Ins. Co. v. AFS/IBEX Fin. Servs. Inc.*, 612 F.3d 800, 807 (5th Cir. 2010) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006)). Pursuant to Section 351.004 of the Texas Tax Code, where a municipality brings suit to recover hotel occupancy taxes, "[i]n addition to the amount of any tax owed . . . the person is liable to the municipality for . . . the municipality's reasonable attorneys' fees." Tex. Tax Code §

---

[10] Defendants propose various applicable lodestars ranging from $4,467,932.75 to $7,200,040.94, depending upon the hourly rates the Court adopts.

351.004(a)(1).

Federal courts sitting in diversity typically apply the lodestar method in calculating reasonable attorneys' fees under Texas law.  *See, e.g.*, *Rappaport v. State Farm Lloyds*, No. 00-10745, 2001 WL 1467357, at *3 (5th Cir. 2001) (per curiam) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (describing the lodestar as the "most useful starting point for determining the amount of a reasonable fee"); *see also Gordon v. Quicksilver Jet Sales, Inc.*, No. A-09-CA-409-SS, 2010 WL 3239266, at *1 (W.D. Tex. Aug. 16, 2010) (using the lodestar to calculate attorneys' fees for plaintiff asserting breach of contract claim until Texas law).[11]  Under this approach, the district court first multiplies the number of hours reasonably expended on the litigation by a reasonable hourly billing rate.  *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995) (citing *Hensley*, 461 U.S. at 433); *see also El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). Once the lodestar figure is initially determined, the court may adjust the figure upward or downward as necessary in light of several enunciated factors.  *La. Power,* 50 F.3d at 324.   The burden is on the party seeking attorneys' fees to demonstrate the amount sought, including any adjustment or enhancement.  *Jackson v. Host Int'l, Inc.*, 426 Fed. App'x 215, 226 (5th Cir. 2011).  An award of attorneys' fees is entrusted to the "sound discretion" of the district court.  *Tex. Commerce Bank Nat'l Ass'n v. Capital Bancshares, Inc*., 907 F.2d 1571, 1575 (5th Cir. 1990).

_____

[11] The Texas Supreme Court has previously noted that attorneys' fees in the class action context may also be calculated using the percentage method.  *Gen. Motors Corp. v. Bloyed*, 916 S.W.2d 949, 960 (Tex. 1996).  However, both parties agree that the lodestar method is the appropriate starting point in calculating attorneys' fees for this case.

### III. Applicable Law and Analysis

**A. Number of hours reasonably expended.**

Plaintiffs assert that they have expended a total of 24,564.08 hours litigating this case and seek fees for 21,000.83 hours (19,516.83 hours in attorney time and 1,484 hours in paralegal time), after adjusting their time for billing judgment. (*See* Exs. 8-10 to Cruciani Decl.) Defendants stipulate that they will not object to or otherwise challenge the reasonableness of the number of attorney hours sought by Plaintiffs, but they object to approximately half of the requested paralegal time as administrative or clerical.

**1. The attorney hours Plaintiffs seek are reasonable given the nature, length, and complexity of this litigation.**

As a fee applicant, Plaintiffs have the burden of proving the reasonableness of the number of hours expended in litigating their case. *Von Clark v. Butler*, 916 F.2d 255, 259 (5th Cir. 1990). To meet its burden, Plaintiffs must submit evidence supporting the time spent and the services performed. *Hensley,* 461 U.S. at 433-34; *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The Court must then review the records and exclude all time that is excessive, duplicative, or inadequately documented. *Watkins,* 7 F.3d at 457. "The hours surviving this vetting process are those reasonably expended on the litigation." *Id.*

Plaintiffs have provided the Court with voluminous billing records documenting the hours spent litigating this matter, adjusted for billing judgment; Defendants have stipulated to the reasonableness of the hours billed by Plaintiffs' attorneys. Thus, the Court need not inquire further. *See, e.g., Makray v. Perez*, 159 F. Supp. 3d 25, 31 (D.D.C. 2016) (analyzing only the hourly-rate component of the lodestar where the parties stipulated to the hours reasonably billed by the plaintiff's attorneys); *Fulford v. NCO Fin. Sys., Inc*., No. 6:07-cv-1196-Orl-22KRS, 2008

WL 2952859, at *6 (M.D. Fla. Jul. 30, 2008) (analyzing only the reasonable number of hours worked in light of the defendant's stipulation to the reasonableness of plaintiff's hourly rates). In the exercise of caution, however, the Court has reviewed the billing records submitted by Plaintiffs and finds that 19,516.83 hours for work performed by attorneys is reasonable in light of the protracted and complex nature of this litigation.

**2. Plaintiffs' paralegal time should be reduced by 15% to account for clerical, vague, duplicative, and excessive time entries.**

Defendants contend that 795.65 of the requested paralegal time is not recoverable as Plaintiffs' paralegal billing records reflect administrative or clerical tasks such as communications with court reporters, scheduling of depositions, collecting and circulating document filings, and organizing copies. (*See* Resp. at 26-27). Defendants point to hundreds of paralegal time entries that they allege reflect the performance of clerical work that should therefore be deducted from the lodestar calculation. (*See* Ex. Q to Resp.) Defendants also object to several vague paralegal time entries, such as "prepare documents" and "finalize witness files," on the grounds that such entries offer no explanation as to what those efforts actually entailed. (*See* Resp. at 26.)

Paralegal work can only be recovered as attorneys' fees to the extent that the paralegal performs work "traditionally done by an attorney." *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982); *see also All Seasons Window & Door Mfg., Inc. v. Red Dot Corp.,* 181 S.W.3d 490, 504 (Tex. App.— Texarkana 2005, no pet.).[12] All other paralegal work is considered

---

[12] "When obtaining payment for work done by paralegals or legal assistants, Texas courts have required more information, such as: (1) [T]he qualifications of the legal assistant to perform substantive legal work; (2) that the legal assistant performed substantive legal work under the direction and supervision of an attorney; (3) the nature of the legal work performed; (4) the legal assistant's hourly rate; and (5) the number of hours expended by the legal assistant." *El Apple I,*

"unrecoverable overhead expenses." *Allen*, 665 F.2d at 697.

"There is no precise test for determining whether a task is legal or clerical." *Malick v. NCO Fin. Servs., Inc*., No. CIV.A. H-14-1545, 2015 WL 4078037, at \*5 n. 4 (S.D. Tex. July 6, 2015). Courts have found legal work may include tasks such as assisting with depositions and document production (under certain circumstances), preparing subpoenas, conducting factual investigation, and compiling data. *See, e.g., id.* (citing *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 (1989)) (approving a fee for work on legal tasks that were not as sophisticated as many but, nonetheless, legal in nature, including "factual investigation, . . . assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence")); *Norris* v. *Causey*, No. CV 14-1598, 2016 WL 1046101, at \*9 (E.D. La. Mar. 16, 2016) (noting that work "traditionally performed" by an attorney includes "digesting depositions, collating, marking and indexing exhibits, [and] preparing and arranging for service of subpoenas"); *Prime Ins. Syndicate, Inc. v. Jefferson*, 547 F. Supp. 2d 568, 575 (E.D. La. 2008) ("Work that is legal in nature includes factual investigation, locating and interviewing witnesses, assisting in discovery, compiling statistical and financial data, checking legal citations, and drafting correspondence."); *Jimenez v. Paw-Paw's Camper City, Inc*., No.

---

370 S.W.3d at 763 (Tex. 2012). Defendants only dispute the nature of the work performed. Plaintiffs have submitted ample evidence as to the qualifications of paralegal Jodie Mow, who performed the majority of the paralegal work on this matter, but provide limited to no information regarding the qualifications of many other paralegals. Nevertheless, the Court takes judicial notice of the training and experience of typical paralegals in large law firms. *See, e.g., Kimberly-Clark Corp. v. Factory Mut. Ins. Co*., No. CIV A 305-CV-2097-B, 2008 WL 1958998, at \*7 (N.D. Tex. Apr. 30, 2008) (recognizing that plaintiff failed to produce evidence as to the qualifications of its paralegals but exercising its discretion to take "judicial notice of the training and experience of typical paralegals in large law firms in addition to the fact that counsel obviously trusted the paralegals to perform the legal work").

CIV.A. 00-1756, 2002 WL 257691, at *23 (E.D. La. Feb. 22, 2002) ("Preparation of service of process materials, deposition notices, deposition summaries and subpoenas . . . is legal, not clerical, work.")

Conversely, courts have deemed non-compensable tasks such as reviewing and calendaring deadlines, printing, copying, and filing documents, drafting cover letters, ordering transcripts, organizing and updating materials and binders, loading and organizing computer databases, redacting and assembling exhibits, and transmitting documents. *See, e.g.*, *Black v. SettlePou, P.C.*, No. 3:10–CV–1418–K, 2014 WL 3534991, at *6 (N.D. Tex. July 17, 2014); *Action Oilfield Servs., Inc. v. Mantle Oil & Gas, L.L.C.*, No. CIV.A. 13-4866, 2014 WL 2465310, at *5 (E.D. La. Jun. 2, 2014); *Fralick v. Plumbers & Pipefitters Nat. Pension Fund*, No. 3:09–CV–0752–D, 2011 WL 487754, at *8 (N.D. Tex. Feb.11, 2011) *Broyles v. Texas*, No. CIV.A.H-08-02320, 2009 WL 2215781, at *11 (S.D. Tex. July 23, 2009), *aff'd*, 381 F. App'x 370 (5th Cir. 2010); *Navigant Consulting, Inc. v. Wilkinson*, No. CIV.A. 3:02-CV-2186B, 2006 WL 5003367, at *4 (N.D. Tex. Mar. 10, 2006), *vacated and remanded on other grounds*, 508 F.3d 277 (5th Cir. 2007).

Defendants are correct that many of Plaintiffs' paralegal billing entries reflect purely clerical tasks such as organizing, printing, and transmitting documents; preparing and updating binders; checking the docket; updating databases; updating calendars; and scheduling depositions with court reporters. These hours are clerical not legal and, as such, may not be recovered. However, Defendants also dispute various time entries that are inherently legal in nature, such as identifying potentially relevant documents for use in depositions,[13] analyzing and reviewing city

---

[13] While some of the paralegal time entries simply describe "tagging" or "marking" documents as exhibits, a declaration from Plaintiffs' lead trial counsel reveals that such efforts were indeed legal

ordinances relating to hotel occupancy tax and interest, conducting factual research for use at depositions, and drafting deposition notices and subpoenas. Accordingly, while a detailed review of the time records reveals that Plaintiffs' paralegals performed many purely clerical tasks, it is also apparent that Defendants overstate the amount of time attributed to the alleged clerical activity for which Plaintiffs seek reimbursement.

Defendants also specifically object to numerous billing entries reflecting time spent by various paralegals searching for press releases on Defendants' websites and for in-office conferences. Searching for press releases constitutes factual investigation and hence, may be considered legal work. Although Defendants only challenge the clerical nature of these tasks, as the fee applicant, Plaintiffs have the burden of demonstrating the reasonableness of the number of hours expended on the prevailing claims. This burden "does not shift to the opposing party merely because that party does not show that the hours are unreasonable or that it did not make specific objections to the hours claimed." *See Von Clark*, 916 F.2d at 259. After reviewing Class Counsel's billing records, it is clear that the number of hours expended on the simple task of locating press releases completed by several different paralegals and the number of in-office conferences are excessive and duplicative[14] and hence, should be reduced.

---

in nature. (*See* Cruciani Decl. ¶ 37) (explaining that paralegals and associates would aid in deposition preparation by searching a computerized database loaded with the document production to identify potentially relevant exhibits). Plaintiffs, however, provide no explanation as to what "preparing witness files"—an entry that shows up repeatedly in paralegal Jodie Mow's billing statements— actually entailed. Without more information, the Court cannot determine whether the nature of this work was legal or clerical in nature. *See El Apple*, 370 S.W.3d at 763 (noting under Texas law, it is the party seeking recovery of paralegal fees to provide proof as to the "nature of the legal work performed.")

[14] For example, at least three different paralegals spent over 100 hours researching press releases in this case.

The Court has thoroughly reviewed and analyzed the paralegal time entries in question. However, a line-item review in this report and recommendation of these voluminous time records segregating the clerical work from the non-clerical work would be extremely time (and paper) consuming. Additionally, much of the clerical activity to which the Defendants object is included in blocked bills, making it extremely difficult for the Court to segregate time spent on clerical tasks from time spent on legal tasks. Finally, Class Counsel, in the exercise of billing judgment, have already deducted 2,440.35 hours in paralegal work to account for administrative work—almost twice the amount of paralegal hours for which Plaintiffs seek fees. (*See* Ex. 9 to Cruciani Decl.) It is unclear whether the clerical time entries pointed out by Defendants have already been deducted from the hours for which Plaintiffs seek reimbursement.

Notwithstanding the above, it appears that at least a portion of the claimed paralegal hours appear to be clerical in nature, vague, excessive, and/or duplicative. Accordingly, the Court, in the exercise of its discretion, recommends that the District Court reduce Plaintiffs' paralegal time by 15%. *See e.g., Martinez v. Refinery Terminal Fire Co.*, No. 2:11-CV-00295, 2016 WL 4594945, at *6 (S.D. Tex. Sept. 2, 2016) (applying a 5% reduction of paralegal hours to account for non-billable clerical hours); *U.S. ex rel. Becker v. Tools & Metals, Inc.*, No. 3:05-CV-0627-L, 2013 WL 1293818, at *14 (N.D. Tex. Mar. 31, 2013) (adopting magistrate judge's recommendation that plaintiff's hours be reduced by 20% across-the-board to account for time entries reflecting administrative tasks); *Villegas v. Regions Bank,* No. CIV.A. H-11-904, 2013 WL 76719, at *4 (S.D. Tex. Jan. 4, 2013) ("the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.")

**B. Reasonable hourly billing rates.**

The parties next vehemently dispute the appropriate reasonable hourly billing rate for both attorneys and paralegals in this case. Plaintiffs contend that their hourly rates (ranging from $295[15] for less-experienced associates to $650 for lead counsel, with the weighted average rate of $546, and paralegal rates ranging from $100 to $200, with the weighted average rate of $162), are entirely reasonable. (*See* Exs. 11 & 12 to Fee Application.) In support, Plaintiffs point to the facts that they have capped their hourly rates for attorneys at $650 and paralegals at $200—even though their standard hourly rates well exceed these caps—and that they only request the Court use their historical hourly rates. Plaintiffs also submit affidavits from two experts—Lamont Jefferson, a well-respected San Antonio attorney and distinguished trial veteran who has tried more than seventy jury cases to verdict, and Charles Silver, a professor with the University of Texas School of Law, who specializes in class actions, attorneys' fees, and legal ethics. (*See* Jefferson Decl. & Suppl. Decl. [#1242-10; #1315-19]; Silver Decl. & Suppl. Decl. [#1242-14]; #1315-22.)

Defendants, on the other hand, contend that Mr. Jefferson and Professor Silver's declarations are unreliable and argue that the rates should be capped to match the median rates set forth in the 2009 Texas Hourly Rate Fact Sheet ("Rate Sheet") and the 2010 Paralegal Division Compensation Survey ("Paralegal Survey") prepared by the State Bar of Texas Department of Research and Analysis. Alternatively, Defendants request that the Court cap Class Counsel's rates based upon the median rates set forth in the 2015 Rate Sheet and 2014 Paralegal Survey. Even if the Court decides to augment Class Counsel's rates, Defendants argue that the Court should use

---

[15] This figure does not include summer associate rates, which Plaintiffs have adjusted to be $90 per hour.

the rates provided by its expert George Spencer, a San Antonio trial and appellate attorney who specializes in legal malpractice and breach of fiduciary duty. Mr. Spencer opines that the prevailing San Antonio attorney rates for attorneys of comparable skill, ability, experience and reputation for litigation of similar complexity range from $285 to $425 and that only attorney Frank Herrera could command up to $550. (*See* Ex. A to Resp., Spencer Decl. ¶¶ 28-32.) Mr. Spencer further opines that the prevailing hourly rate for litigation paralegals in San Antonio ranged from $75 to $130 per hour, and it would be unreasonable to compensate any paralegal at a rate beyond $130 per hour. (*Id.* ¶ 33.)

1. **Reasonable attorney hourly billing rates.**

Reasonable hourly rates for purposes of the lodestar calculation "are to be calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 896 (1984). Unless limited circumstances justify the use of out-of-district counsel, the relevant legal community is the community in which the district court sits. *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002); *see also Am. Zurich Ins. Co. v. Jasso*, 598 F. App'x 239, 250 (5th Cir. 2015). "[T]he burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n. 11. Generally, the reasonable hourly rate is established through affidavits of other attorneys of "similar caliber practicing in that community." *Watkins*, 7 F.3d at 458.

Plaintiffs assert that the Rate Sheet and Paralegal Survey are "legally and factually irrelevant in determining whether Class Counsel's hourly rates are reasonable," pointing to numerous deficiencies with both studies. (S*ee* Reply at 2-6.) Despite the Rate Sheet's various shortcomings, courts in this district regularly consider the Rate Sheet as evidence of a reasonable

rate. *See, e.g.*, *Rodriguez v. Mech. Tech. Servs., Inc.*, No. 1:12-CV-710-DAE, 2015 WL 8362931, at *6 (W.D. Tex. Dec. 8, 2015) ("Judges in the San Antonio Division regularly take judicial notice of the Rate Report.") (collecting cases). Notwithstanding the foregoing, contrary to Defendants' contentions, the Rate Sheet and the Paralegal Survey are simply the starting point for the Court's analysis. Capping Class Counsel's rates based entirely upon the median market rates identified in the Rate Report and Paralegal Survey would be inappropriate and unsupported by relevant legal authority.

Rather, taking these median rates into consideration, the Court must determine if the rates in this case should be adjusted based upon various factors including the nature of the litigation, the billing attorneys' specific credentials, and the size of the movant's firm. *See, e.g., Hoffman v. L & M Arts*, No. 3:10-CV-0953-D, 2015 WL 3999171, at *2 (N.D. Tex. July 1, 2015) (finding that "the nature and complexity" of the litigation warranted the use of higher rates than represented by the median rates reflected in the 2013 Rate Sheet); *DZ Bank AG Deutsche Zentral-Genossenschaftsbank v. Cornette Invs., LLC*, No. SA:13-CV-468-XR, 2013 WL 4854392, at *4 (W.D. Tex. Sept. 11, 2013) (taking judicial notice of the 2013 Rate Sheet but increasing plaintiff's hourly rate based upon the nature of the litigation); *Ibarra v. United Parcel Serv., Inc.*, No. MO-10-CA-113, 2013 WL 12121463, at *2 (W.D. Tex. July 9, 2013) (agreeing that the Rate Sheet is relevant but concluding that counsel for plaintiff is entitled to a "premium" by virtue of her status as a certified specialist in employment law"); *Radiant Sys., Inc. v. Am. Scheduling, Inc.*, No. 3:04-CV-2597-P, 2006 WL 2583266, at *7 (N.D. Tex. Sept. 7, 2006) (noting that where an attorney works at a large, international law firm, in determining the reasonableness of the attorney's rate, the proper comparison should be a "firm of equal size with multiple offices, not a relatively smaller firm.").

In light of the delay in payment of attorneys' fees, the Court finds that the 2015 Rate Sheet and 2014 Paralegal Survey are the appropriate starting points for the determination of reasonable rates in this litigation. *See Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 773 (5th Cir. 1996) (("In compensating for a delay [in payment of attorneys' fees], the district court may either grant an unenhanced lodestar based on current rates, or calculate the lodestar using the rates applicable when the work was done and grant a delay enhancement.") (internal citations omitted)).

Given the number of attorneys involved in this litigation, both sides agree that it would be appropriate to classify attorneys in tiers by years of experience. Plaintiffs seek attorneys' fees for three different "groups" of attorneys: (1) seasoned trial lawyers with more than twenty years of experience; (2) experienced attorneys who have been practicing between ten and twenty years; and (3) attorneys with fewer than ten years of experience. (*See* Jefferson Decl. ¶¶ 16-19.) According to the 2015 Rate Sheet, the median hourly rate in San Antonio for attorneys with fewer than ten years of experience was $216;[16] $267 for attorneys with ten to twenty years of experience[17]; and $294[18] for attorneys with more than twenty years of experience. However, these median rates do not account for the nature of the litigation,[19] an attorney's special qualifications, the size and

───────────────────

[16] This figure averages the median rates provided for attorneys with two or fewer years, attorneys with three to six years, and attorneys with seven to ten years.

[17] This figure averages the median rates provided for attorneys with eleven to fifteen years and sixteen to twenty years of experience.

[18] This figure averages the median rates provided for attorneys with twenty-one to twenty-five years and those with more than twenty-five years of experience.

[19] While the Rate Sheet sets forth the median hourly rates by practice area, including tax law ($288) and commercial litigation ($263), it does not publish the rates for class actions or complex commercial litigation—the nature of this litigation. (*See, e.g.*, Supp. Jefferson Decl. [#1315-19] ¶ 7 (categorizing the instant litigation as "high-end commercial litigation," which would require the highest rate for the same or similar work as opposed to the median rate).

reputation of his or her firm, and the fact that rates charged in San Antonio are likely higher than those charged in New Braunfels, which is included in the survey as party of the San Antonio metropolitan statistical area. Accordingly, the Court believes that an upwards adjustment to these rates is warranted.

Hotel-occupancy litigation is a specialized type of litigation, as evidenced by the fact that there are only a handful of Texas published opinions in this area. While several lawsuits and/or administrative proceedings have been filed against online-travel-booking companies for violations of state or municipal tax laws, as the District Court noted in its Findings of Fact and Conclusions of Law, "[t]he Court is not aware of any other class actions, and the Court is not aware of any other case that have been tried to verdict." (*See* [#1096] at ¶ 293.)[20]

Moreover, the Court takes judicial notice of lead and co-counsel's exceptional qualifications, which the District Court observed when certifying the class in this case:

> The lead attorneys in this case are Steven Wolens and Gary Cruciani. Both attorneys have a wealth of experience in complex litigation, including substantial class action experience. (Dkt. # 45, Exh. B; Dkt. # 190). Their law firm, Diamond McCarthy [now McKool Smith], is able to provide the necessary staff support and financial resources for the prosecution of the lawsuit. The law firm of Baron & Budd will continue its role as co-counsel, and available to provide extra support, if needed. Attorney Frank Herrara, Jr. is also appearing as local counsel, and Mr. Herrera's professional reputation and legal knowledge are undeniable. Having considered their qualifications and experience, and having observed the manner in which they have handled the case thus far, the Court is confident that class counsel will serve the best interests of the putative class in litigating this case to conclusion.

_____

[20] Although Defendants now seek to downplay the complexity and novelty of the issues involved in this case, Defendants have on several prior occasions acknowledged the difficulty of the issues involved. (*See, e.g.,* Cruciani Supp. Decl. [#1315-1] ¶ 4.) Indeed, in their motion to extend the page limits for the filing of their appellate brief, Defendants claim that "the unusual length and complexity of this ten-year old case, the significant issues involved, and the sheer volume of the record and number of parties, unavoidably requires briefing in excess of the normal word limit." (*See id.*; *see also* Ex. A to Suppl. Cruciani Decl.)

[#248]. Indeed, Class Counsel's superior qualifications were essential to the proper administration of this case. *See, e.g.*, *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 951 (E.D. Tex. 2000) ("class actions are complex mechanisms that require exceptional lawyers."). Further, the majority of attorneys seeking fees in this case worked for McKool Smith, PC, a large-nationally recognized law firm with well over 100 attorneys. Accordingly, the above-referenced rates do not reflect the rates for a comparably-sized firm.[21]

Finally, the Court also looks to Class Counsel's current rates in determining the reasonableness of the rates sought.[22] *See Dillard v. City of Greensboro*, 213 F.3d 1347, 1354–55 (11th Cir. 2000) (noting that what an attorney charges clients is "perhaps the best, evidence of his market rate"); *In re ASARCO, LLC*, No. 05-21207, 2011 WL 2975716, at *21 (Bankr. S.D. Tex. July 20, 2011) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1403 (4th Cir.1987) (noting that the "prevailing market rate" may be established through, among other things, "specific evidence of counsel's actual billing practice or other evidence of the actual rates which counsel can attract in

_____

[21] While the Rate Sheet provides hourly rates by geographic region and by firm size, no such rates exist for San Antonio law firms of 101 to 200 attorneys. And, the sample size for law firms in the next category (201 to 400 attorneys) is so small that the Court questions its statistical significance.

[22] The parties heavily dispute whether the rates charged by Defendants should also be considered as evidence in determining reasonable rates for purposes of Plaintiffs' Fee Application. There appears to be a conflict in law on this issue. *Compare Bear Ranch, LLC v. Heartbrand Beef, Inc.*, No. 6:12-CV-14, 2016 WL 3549483, at *5 (S.D. Tex. June 30, 2016) (noting in breach of contract case that "[t]he rate charged by opposing counsel is also some evidence of what a reasonable rate is for a case like this one") *with MCI Telecomms. Corp. v. Crowley*, 899 S.W.2d 399, 403 (Tex. App.—Fort Worth 1995, no writ) (conditionally granting writ of mandamus after trial court ordered defendant to respond to plaintiff's discovery requests concerning defendant's attorneys' fees on the grounds that defendant's defense fees were "patently irrelevant" and not reasonably calculated to lead to the discovery of admissible evidence). Because the record contains plenty of other evidence regarding reasonable rates, the Court need not determine whether evidence of Defendants' rates should also be considered.

the market").  While Class Counsel's actual rates are certainly relevant to the Court's determination, the Court finds that Class Counsel's current rates to be high[23] and not in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.  *See La. Power,* 50 F.3d at 328 ("To determine reasonable rates, a court considers the attorneys' regular rates as well as prevailing rates.")  Indeed, Plaintiffs' expert Mr. Jefferson's standard rate was $640 in December 2015 while a shareholder in the San Antonio office of Haynes and Boone LLP's, an international law firm with over 400 attorneys.  (*See* Jefferson Supp. Decl. ¶ 10.)  And, as Mr. Jefferson acknowledges, $640 was not necessarily the rate always actually charged to clients.  This is because Haynes and Boone, like most large law firms, provides discounts to clients in exchange for large volumes of work.  (*Id.* ¶ 9.)[24]

After considering the 2015 Rate Sheet, the complex nature of this lengthy litigation, the special credentials possessed by the billing attorney as detailed in the evidence before the Court, the size of Class Counsel's law firms, Class Counsel's current rates, and the evidence offered by the parties' experts in this case, the Court recommends the District Court find that the following are reasonable hourly rates for the attorneys in this litigation:

---

[23] For example, lead counsel Mr. Cruciani asserts that his current rate is $870 per hour. (*See* Ex. 5 to Cruciani Decl.)

[24] While Mr. Jefferson contends that such discounts are typically only provided to long-standing clients, the Court notes that similar discounts are provided to attract new clients or large litigation matters.

| "Tier" | Attorneys Within applicable Tier[25] | Prevailing Market Rate |
|---|---|---|
| Greater than 20 years of experience | Gary Cruciani<br>Tom Graves<br>Alan Rich<br>Rosemary T. Snider<br>Steven Wolens | $625 |
| 10 to 20 years of experience | Frank Goodrich<br>William T. Reid<br>Thomas Sims | $475 |
| 5 to 9 years of experience | David Ammons<br>Michael J. Donley<br>Laurie Flood<br>Michael P. Fritz<br>Chris Harrington[26]<br>Laura Van Pelt[27]<br>Clifford H. Walston<br>Paul Williams | $350 |
| 0 to 4 years of experience[28] | Sharon Bautisti<br>Charles E. Fowler[29] | $250 |

---

[25] Given that this litigation has spanned over a decade, the Court will base the individual's level of experience on the attorney's expertise at the time the majority of the work was performed, the year 2009. *See Leroy v. City of Houston*, 831 F.2d 576, 584 (5th Cir. 1987) (noting that while current rates may be used to compensate for inflation and delays in payment, attorneys receive a "double boon" if rates are based upon current figures and current levels of expertise).

[26] Although Mr. Harrington graduated in 1993 and Mr. Williams graduated in 1996, both were classified as associates in 2009 and as such, would have commanded a lower rate than other thirteen to sixteen year attorneys. (*See* Cruciani Decl. ¶¶ 11, 15a.) Accordingly, the Court finds it more appropriate to categorize both Mr. Williams and Mr. Harrington at a lower tier.

[27] Other than summarily identifying Ms. Van Pelt as a Partner with Baron & Budd, Plaintiffs have failed to produce any evidence regarding Ms. Van Pelt's years of experience. Because Plaintiffs have failed to meet its burden to show Ms. Van Pelt's years of experience, the Court assumes for purposes of this Report and Recommendation that Ms. Van Pelt falls within this lower tier.

[28] Although both sides lump all attorneys with up to ten years of experience together, there is a huge difference in expertise (and hence rates) in this group of attorneys. Accordingly, the Court finds it appropriate to split this category into two different tiers.

| | Carrie Hill (Lazenby)[30] Heidi Willers | |
|---|---|---|
| Summer Associates | Jonathan Powers Jake Roberts Phong Tran | $75 |

Not included in the above chart are Trey Martinez Fisher, an attorney with ten to twenty years of experience and Frank Herrera, an attorney with well over twenty years of experience. Both Mr. Fisher and Mr. Herrara practice at smaller firms. Mr. Fisher is a sole practitioner and Mr. Herrera is the founding partner of a law firm with less than five attorneys. Given that Mr. Fisher is a sole practitioner, the Court finds that a rate of $300 would be more in line with the prevailing rate in the community. With respect to Mr. Herrera, the Court agrees with Defendants that a rate of $550 is a reasonable rate for this litigation. (*See* Spencer Decl. ¶ 23.)

   2.   **Reasonable paralegal hourly billing rates.**

   According to the 2014 Paralegal Survey, the median hourly rate for paralegals in 2014 was $121. However, the Paralegal Survey does not break down rates based upon a paralegal's education level and certification. According to Mr. Jefferson, the prevailing rates charged by

---

[29] Although Mr. Fowler graduated in 2012, Plaintiffs assert that his hourly rate should be set at $515. (*See* Cruciani Decl. ¶ 13; Ex. 10 to Cruciani Decl.) While Mr. Fowler's academic credentials are impressive, the Court finds $515 per hour to be highly excessive in light of Mr. Fowler's limited legal experience.

[30] Pursuant to Mr. Jefferson's declaration, Ms. Hill has less than ten years of experience. (*See* Jefferson Decl. ¶ 19.) However, Plaintiffs have not presented any evidence showing Ms. Hill's actual years of experience so that the Court may determine whether she should be placed in the 0-4 year tier or the 5 to 9 year tier. Because Class Counsel has failed to meet its burden to show Ms. Hill's years of experience, the Court assumes for purposes of this Report and Recommendation that Ms. Hill falls within the lower tier.

paralegals in the San Antonio, Bexar County, and Western District of Texas area who have superior training, experience, and skill range from $75 to $200 per hour. (*See* Jefferson Decl. ¶ 23.) Case law supports such rates, depending upon the paralegal's experience and size of the paralegal's firm. *See, e.g., Davis v. Perry*, No. No. SA-11-CA-788, 2014 WL 172119, at *2 (W.D. Tex. Jan. 15, 2014) (noting that "[d]istrict courts in Texas have held that paralegal hourly rates between $60 and $200 are reasonable" and adjusting the median hourly rate of $107 to $125 based upon the paralegal's twenty years of experience and title as the head paralegal and senior paralegal coordinator at a large firm) (collecting cases).

After considering the 2014 Paralegal Survey, the individual paralegal's experience as detailed in the evidence before the Court, the size of the paralegal's firm, the Court recommends the District Court find that the following are reasonable hourly rates for the paralegals in this litigation:

| "Tier"[31] | Paralegals within Applicable Tier | Prevailing Market Rate |
|---|---|---|
| Greater than 20 years of experience | Amiee Isfalt<br>Kim James<br>Jodie Mow[32] | $165 |
| 10 to 20 years of experience | Don Gaiser<br>Daniel Ambriz | $115 |
| 5 to 9 years of experience | Joel Leach | $95 |

---

[31] As with the attorneys, the Court will base the paralegal's level of experience on his or her expertise at the time the majority of the work was performed, the year 2009.

[32] Although Ms. Mow's paralegal experience is extensive, and she was undoubtedly integral to the prosecution of this case, $200 per hour is a high paralegal rate for San Antonio.

| 0 to 4 years of experience | Lindsay Carter[33]<br>Mary Ferrari<br>Betty Sanders | $65 |

## C. The Court calculates the lodestar in this litigation to be $10,005,790.50.

Based upon the foregoing recommendations, the Court calculates the lodestar to be $10,005,790.50 as detailed below:

| Timekeeper | Reasonable Hours Billed[34] | Reasonable Rate | Allowed Fees |
|---|---|---|---|
| Gary Cruciani | 5,624.00 | $625 | $3,515,000.00 |
| Tom Graves | 542.90 | $625 | $339,312.50 |
| Alan Rich | 80.75 | $625 | $50,468.75 |
| Rosemary T. Snider | 1,527.30 | $625 | $954,562.50 |
| Steven Wolens | 2,783.53 | $625 | $1,739,706.25 |
| Frank Goodrich | 629.00 | $475 | $298,775.00 |
| William T. Reid | 396.50 | $475 | $188,337.50 |
| Thomas Sims | 188.10 | $475 | $89,347.50 |
| David Ammons | 143.00 | $350 | $50,050.00 |
| Sharon Bautisti | 73.25 | $250 | $18,312.50 |

---

[33] Plaintiffs have provided no information regarding the experience for Ms. Carter. Accordingly, the Court presumes for purposes of this Report and Recommendation that Ms. Carter falls within the lowest tier.

[34] This column includes the hours the parties stipulated as reasonable as well as the paralegal hours sought reduced by 15% pursuant to the Court's recommendation as set forth above in Section III.A. (*See* Ex. 10 to Cruciani Decl. & Stipulation.)

27

| | | | |
|---|---|---|---|
| Michael J. Donley | 835.80 | $350 | $292,530 |
| Laurie Flood | 146.25 | $350 | $51,187.50 |
| Michael P. Fritz | 3,271.30 | $350 | $1,144,955.00 |
| Chris Harrington | 55.60 | $350 | $19,460.00 |
| Laura Van Pelt | 104.00 | $350 | $36,400.00 |
| Clifford H. Walston | 59.10 | $350 | $20,685.00 |
| Paul Williams | 1,242.10 | $350 | $434,735.00 |
| Charles E. Fowler | 42.40 | $250 | $10,600.00 |
| Carrie Hill (Lazenby) | 502.75 | $250 | $125,687.50 |
| Heidi Willers | 108.80 | $250 | $27,200.00 |
| Jonathan Powers | 101.60 | $75 | $7,620.00 |
| Jake Roberts | 45.90 | $75 | $3,442.50 |
| Phong Tran | 98.80 | $75 | $7,410.00 |
| Trey Martinez Fisher | 440.80 | $300 | $132,240.00 |
| Frank Herrera | 473.30 | $550 | $260,315.00 |
| Jodie Mow | 852.64 | $165 | $140,684.78 |
| Don Gaiser | 48.62 | $115 | $5,591.30 |
| Joel Leach | 39.53 | $95 | $3,754.88 |
| Daniel Ambriz | 37.40 | $115 | $4301.00 |
| Lindsay Carter | 29.54 | $65 | $1,919.94 |
| Mary Ferrari | 67.83 | $65 | $4,408.95 |
| Amiee Isfalt | 14.03 | $165 | $2,314.13 |

| | | | |
|---|---|---|---|
| Kim James | 133.07 | $165 | $21,956.14 |
| Betty Sanders | 38.76 | $65 | $2,519.40 |
| **Lodestar** | **--** | **--** | **$10,005,790.50** |

**D. The lodestar should be enhanced by a 2.5 multiplier due to the extraordinary results obtained and the contingent nature of this case.**

Under both federal and Texas law, the lodestar is a presumptively reasonable fee, however, exceptional circumstances may justify enhancements. *Pembroke v. Wood Cty.*, 16 F.3d 1214 (5th Cir. 1994) (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)); *El Apple*, 370 S.W.3d at 765 ("We accordingly accept the premise that lodestar presumptively produces a reasonable fee, but that exceptional circumstances may justify enhancements to the base lodestar."). In diversity actions governed by Texas law, federal courts must analyze the factors set forth in *Arthur Andersen* to determine whether an adjustment to the lodestar is warranted. *Plains Cotton Coop. Ass'n v. Gray*, No. 16-10806, 2016 WL 7093943, at *4 n. 4 (5th Cir. Dec. 5, 2016). These factors include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *See Arthur*

*Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (citing Tex. Disciplinary R. Prof. Conduct 1.04).[35]

Because the analysis under the *Arthur Andersen* factors is so similar to the analysis under *Johnson v. Georgia Highway Express*, the Court may draw upon federal precedent in determining whether an enhancement is appropriate. *See, e.g., Plains Cotton,* 2016 WL 7093943, at *4 n. 4; *Northwinds Abatement, Inc. v. Emp'rs Ins. of Wausau,* 258 F.3d 345, 354 n. 9 (5th Cir. 2001) (noting that the *Arthur Andersen* factors are "virtually identical to those examined by federal courts in awarding attorneys' fees"). "[A] fee applicant seeking an enhancement must produce 'specific evidence' that supports the award." *Jackson*, 426 Fed. App'x at 225 (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010)).

Notwithstanding the strong presumption that the lodestar produces a reasonable fee, after considering the *Arthur Andersen factors*, the Court finds that rare and extraordinary circumstances justify an upwards enhancement of 2.5 times the lodestar. In assessing the use of a

_____

[35] Plaintiffs argue that their Fee Application is governed by Section 26.003(a) of the Texas Civil Practice and Remedies Code and its implementing rule, Texas Rule of Civil Procedure 42(i). While Texas substantive law governs the award of attorneys' fees, federal law governs procedure. *See Hovanec v. Midwest Underground, Inc.*, No. 4:14-CV-409, 2015 WL 4082863, at *1 (E.D. Tex. June 23, 2015). Plaintiffs cite to what appears to be Texas procedural rules with no authority or argument that these rules apply in federal court. Regardless, both Section 26.003(a) and Rule 42(i) simply require the application of the lodestar method to class actions and provide courts with the discretion to increase the lodestar by up to four times based on the factors in Rule 1.04(b) of the Texas Disciplinary Rules of Professional Conduct— the same factors set forth in *Arthur Andersen*. *See, e.g., E.F. Johnson Co. v. Infinity Glob. Tech.*, No. 05-14-01209-CV, 2016 WL 4254496, at *12 (Tex. App.—Dallas Aug. 11, 2016, no pet.) (noting that pursuant to Tex. R. Civ. P. 42(i), "a trial court should not reduce a fee award to less than one quarter of the lodestar and should not increase a fee award by more than four times the lodestar.") Accordingly, it is unnecessary for the Court to determine whether Section 26.003(a) of the Texas Civil Practice and Remedies Code and Rule 42(i) of the Texas Rules of Civil Procedure govern this dispute.

multiplier/enhancer in this case, the Court will focus on the factors that favor an adjustment in the lodestar: the amount involved and the results obtained and the contingent nature of the case.[36] The other *Arthur Andersen* factors were already accounted for in calculating the lodestar and/or do not justify an upwards or downwards enhancement, and hence will not be considered when determining whether an adjustment is warranted. *See Blum v. Stenson*, 465 U.S. 886, 898 (1984) (noting that the novelty and complexity of the issues, special skill and experience of counsel, and quality of representation are subsumed within the lodestar calculation); *Shipes v. Trinity Indus.*, 987 F.2d 311, 321–22 (5th Cir. 1993) (noting that the skill required, special time limits imposed, and preclusion of employment[37] are generally subsumed within the lodestar amount); *Meesook v. Grey Canyon Family Med., P.A.*, No. 5:13-CV-729-XR, 2014 WL 5040133, at *5 (W.D. Tex. Oct. 8, 2014) (noting that several of the *Johnson* factors—the time and labor required, skill required, attorneys' customary fee, time constraints of the case, and the experience, reputation, and ability of the attorneys—are all subsumed within the lodestar analysis and refusing to use these additional

---

[36] *See Cobb v. Miller,* 818 F.2d 1227, 1232 (5th Cir. 1987) ("[I]f there is "some assurance that the court has arrived at a just compensation based upon appropriate standards . . . , it will not always be necessary for a district court to address each of the twelve [*Johnson*] factors in explaining the considerations affecting its decision.") (quoting *Davis v. Fletcher,* 598 F.2d 469, 471 (5th Cir.1979)); *see also One Beacon Ins. Co. v. T. Wade Welch & Assocs.*, No. H-11-3061, 2015 WL 5021954, at *4 (S.D. Tex. Aug. 24, 2015) ("[E]vidence of each of the *Andersen* factors is not required to support an award of attorney's fees.") (quoting *Arthur J. Galagher & Co. v. Dieterich*, 270 S.W.3d 695, 706 (Tex. App.—Dallas 2008, no pet.)).

[37] Class Counsel generally allege that they have "devoted significant time to this case to the exclusion of opportunities to represent other clients, particularly from 2006 through 2009." (*See* Cruciani Decl.¶ 100.) However, Class Counsel make no specific allegations that work on this case forced them to decline other employment. Accordingly, there is no reason to believe this factor was not already included in the lodestar calculation. *See e.g, Rodriguez v. Mech. Tech. Servs., Inc.*, No. 1:12-CV-710-DAE, 2015 WL 8362931, at *7 (W.D. Tex. Dec. 8, 2015) (refusing to consider preclusion of other employment as a basis to adjust the lodestar where plaintiffs failed to "point to specific instances of precluded employment opportunities").

factors to adjust the lodestar amount).

**1.  The amount involved and the results obtained justify an upwards enhancement.**

The fourth factor—"the amount involved and results obtained" refers to a plaintiff's overall level of success. *Hensley*, 461 U.S. at 430.  The total amount of actual damages Plaintiffs requested the jury award was $20,579,486; the jury awarded the full amount [#1002].  With interest, penalties, and damages accruing from additional hotel transactions since the jury verdict, the total monetary damages as of April 11, 2016 as set forth in the Court's Amended Final Judgment are $84,123,089 [#1219].  The District Court also awarded Plaintiffs declaratory relief.  Although the parties dispute the future monetary value of this monetary relief—Plaintiffs' expert values declaratory relief at more than $125 million, while Defendants' expert questions the methodology for such calculations but submits no countervailing evidence regarding the value of the declaratory relief[38]— it is clear that the future monetary value of the declaratory relief is significant and not inherently speculative.  Indeed, a large part of the growth from the Final Judgment to the Amended Final Judgment was due to Defendants' refusal to adjust their business practices to comply with the District Court's award of declaratory relief, despite the District Court's clear warning.  (*See, e.g.,* [#1096] ¶ 265) ("Damages will continue to accrue with each online transaction through the date that judgment is entered and beyond unless Defendants *immediately* begin calculating, collecting and remitting tax on the total retail amount charged to the consumer.") (emphasis in original).

Defendants do not dispute that Plaintiffs achieved a final judgment for a large sum of

---

[38] (*See* Leitzinger Decl. [#1242-13] ¶ 21; Leitzinger Supp. Decl. [#1242-13] ¶ 21; Serwin Decl. [#1308-23].)

money. Nor do Defendants dispute Plaintiffs assertion that "this is the largest judgment secured by any state or municipality" in a suit against Defendants to recover hotel occupancy taxes. (*See* Cruciani Decl. ¶ 64.) Rather, Defendants argue that the Court should not consider the results obtained because such results are "indicative of the 19,517 attorney hours that Class Counsel put into the case, and for which they will be fully compensated pursuant to the Court's lodestar determination." (Resp. at 39.) The Court does not believe that the amount involved and the extraordinary results obtained were subsumed within the lodestar analysis. It goes without saying that attorneys can expend significant effort and still lose. Accordingly, the Court recommends that the amount involved and extraordinary results obtained justify an upwards enhancement.

### 2. The contingent nature of the case justifies an upwards enhancement.

It is undisputed that Class Counsel undertook this case on a contingency fee basis after lead counsel entered into a Legal Services ("LSA") Agreement in 2006 with the City of San Antonio. (*See* Cruciani Decl. ¶¶ 17-18.) Although Defendants argue that "172 other class members decided against entering [into] a contingency agreement with Class Counsel," by undertaking this litigation as a class action, Class Counsel did work on a contingency fee basis on behalf of the 172 other cities. (*See* Resp. at 44.)

By representing Plaintiffs in this ***decade-long*** litigation on a contingent-fee basis, Class Counsel assumed a substantial risk that the litigation would yield no recovery, leaving them uncompensated. Indeed, Defendants vigorously fought Plaintiffs every step of the way from filing a motion to dismiss, to opposing certification, to trial, to post-verdict and finally, to post-judgment motion practice. The fate met by the City of Houston, which opted out of the class and sued on its own using an entirely different litigation strategy, reinforces the real risk faced by Class Counsel of losing on the merits. *See City of Houston v. Hotels.com, L.P.*, 357 S.W.3d 706 (Tex. App.—

Houston 2011, pet. denied) (granting summary judgment to online-travel companies in hotel-occupancy suit brought by the City of Houston after construing the ordinance's plain language to impose a tax on the amount paid to the hotel, not the amount paid to the online-travel company but emphasizing that the opinion was limited to the record before it and the outcome of other similar cases could be different); *see also* Silver Decl. ¶¶ 57-61) (explaining that the City of Houston lost on summary judgment because its lawyers "presented its case for judicial decision without developing the legal analyses and the detailed factual record that were needed to win. Class Counsel litigated far more intensively."). Accordingly, the Court finds that the unenhanced lodestar does not reflect the high risk borne by the contingent nature of this litigation.

Notwithstanding the above, Defendants argue that the United States Supreme Court and the Fifth Circuit specifically bar the use or consideration of a contingency-fee agreement to enhance a lodestar calculation. Defendants are correct that in federal-question cases, enhancement based on contingent fees is foreclosed by well-established Supreme Court precedent. *See Perdue*, 559 U.S. at 558 (citing *Dague*, 505 U.S. 557 (1992)). However, "[t]he Texas Court of Appeals have consistently applied enhancements based on the *Johnson* factors, including the contingent fee nature of the case despite the Supreme Court's unequivocal holding in *Dague*." *Jackson*, 426 Fed. App'x at 227-28 (5th Cir. 2011) (collecting cases). Accordingly, under Texas law, enhancement of attorneys' fees on the basis of the contingent nature of the case is permissible. *Id.* (holding that the trial court did not abuse its discretion in finding that enhancement was proper based on the contingent nature of the case, the amount involved and the result obtained, and awards in similar

cases).[39]

### 3. An enhancement of 2.5 times the base lodestar is warranted.

Pursuant to the LSA, San Antonio agreed that lead counsel would receive attorneys' fees in the amount of 30-percent of the "gross recovery," which includes "the present value of any monetary payments agreed or ordered to be made" and "[a]ny statutory attorney's fee paid by defendants. (*See* LSA [#1241-2] ¶¶ 8-9.) Applying the contractual percentage to the total monetary relief secured by San Antonio ($24,679,619), would result in a fee of $8.3 million. (*See* Leitzinger Decl. ¶ 23.) According to Plaintiffs' expert, applying the contingency percentage to the total present value of the declaratory relief as applied to San Antonio ($41,135,353) would result in an additional award of $12.3 million. (*Id*.) Thus, the contingency amount on the award to the City of San Antonio would result in approximately 2.10 times the amount of the base lodestar.

While the Court is not bound by the LSA, it finds such evidence persuasive after

_____

[39] In *El Apple*, the Texas Supreme Court, construing the attorneys' fees provision of Chapter 21 of the Texas Labor Code, noted that in determining the award of attorneys' fees, "we may draw on the far greater body of federal court experience with lodestar and fee shifting under the similar federal statute." 370 S.W.3d at 765. Defendants argue that "[b]y emphasizing the propriety of following federal precedent . . . the *El Apple* Court strongly suggested that courts should adopt the federal standard and bar consideration of a contingent fee agreement when analyzing a lodestar request in a fee-shifting case." (Resp. at 46.) Contrary to Defendants' assertions, the Texas Supreme Court said nothing in *El Apple* that would preclude a Texas court that is deciding whether an enhancement is warranted from considering contingency-fee arrangements in every case. Rather, the Court in *El Apple* simply noted that Texas courts *may* draw upon federal precedent construing attorneys' fees provision in federal statutes that are analogous to state statutes with similar fee provisions. (Notably, this case does not even involve the construction of a Texas statute that has a federal analogue.) Post-*El Apple*, courts in this Circuit continue to allow the use of a multiplier in diversity cases based upon the contingent nature of a fee. *See, e.g., One Beacon,* 2015 WL 5021954, at *11-12. Accordingly, until the Texas Supreme Court or Fifth Circuit holds otherwise, consideration of the contingent nature of the case is permissible when assessing an award of attorneys' fees in diversity actions governed by Texas law.

considering the relevant *Arthur Andersen* factors and the applicable case law. *Forbush v. J.C. Penney Co.*, 98 F.3d 817, 823 (5th Cir. 1996) (("A district court is not bound by the agreement of the parties as to the amount of attorneys' fees"; instead "[t]he court must only consider whether the attorneys' fees proposed are reasonable) (internal quotations omitted)). Given that Class Counsel represented 172 other Plaintiffs in addition to San Antonio, the Court finds that a multiplier of 2.5 the base lodestar would account for the amount involved and the results obtained as well as the contingent nature of the case. Such an award is consistent with prior federal and state court precedent. *See, e.g., OneBeacon,* 2015 WL 5021954, at *13 (applying a multiplier of three to account for the contingent nature and undesirability of the case); *In re Dell Inc.*, No. A-06-CA-726-SS, 2010 WL 2371834, at *15 n. 7 (W.D. Tex. June 11, 2010) *aff'd, appeal dismissed sub nom*, 669 F.3d 632 (5th Cir. 2012) ("In using the lodestar method, courts typically apply "multipliers" ranging from one to four"); *Stratton v. XTO Energy, Inc.*, No. 02-10-00483-CV, 2012 WL 407385, at *9 (Tex. App.—Fort Worth Feb. 9, 2012, no pet.) (holding that the trial court erred in refusing to apply the requested multiplier of 2.17 to reflect the exceptional results achieved by plaintiffs' counsel, the undesirability of the litigation, the high risk borne by its contingent nature, and awards in similar class action litigation). Accordingly, the Court recommends that the District Court award attorneys' fees in the amount of $25,014,476.25.[40]

---

[40] While the recommended award amounts to several million dollars more than that awarded by the jury, it is less than a one-third of the amount set forth in the Amended Final Judgment. Moreover, "[u]nder Texas law disproportion alone will not render an attorney fee award excessive." *Quanta Servs. Inc. v. Am. Admin. Grp. Inc.*, 384 Fed. App'x, 291, 298 (5th Cir. 2008); *see also Metroplex Mailing Servs., LLC v. RR Donnelley & Sons Co.*, 410 S.W.3d 889, 900 (Tex. App.—Dallas 2013, no pet.) ("[T]he amount awarded for attorney's fees can greatly exceed the amount of damages recovered.")

**E.  Further enhancement of the lodestar from the common fund should be denied.**

Class Counsel alternatively urge that the Court award them the remainder of the $43,199,878 sought out of the common fund—the difference between the maximum enhancement under Texas law (four times the base lodestar) and the amount of attorneys' fees statutorily shifted to Defendants.  Accordingly, Class Counsel seek an additional award of more than $15 million from the common fund.  Because the enhanced lodestar of $25,014,476.25 is a reasonable amount of fees, the common fund should not be forced to bear this additional expense.  *See, e.g., Humphrey v. United Way of Texas Gulf Coast,* 802 F. Supp. 2d 847, 859 (S.D. Tex. 2011) (declining to permit plaintiff to recover under both the statute and the common fund doctrine on the grounds that such an award would create a windfall); *Carrabba v. Randalls Food Mkts.*, 191 F. Supp. 2d 815, 826-27 (N.D. Tex. 2002) (finding that fee-shifting award that counsel already received was more than adequate to compensate counsel for their work on behalf of the class, including risk of loss).

**F.  Plaintiffs' request for contingent appellate fees should be denied without prejudice.**

As discussed above, Defendants have filed a notice of appeal of the Amended Final Judgment and Plaintiffs have filed a notice of cross-appeal [#1223, 1224].  Plaintiffs request that the Court award it fees and expenses in the range of $300,000 to $350,000 for successfully defending against Defendants' appeal and successfully prosecuting its cross-appeal.  Defendants oppose this request on the grounds that it is premature.

"Under Texas law, if a party is entitled to recover attorney's fees in the trial court, the party is also entitled to attorney's fees after successfully defending on appeal." *Jackson*, 426 Fed. App'x at 228.  And, "[i]t is well-settled [under Texas law] that an award of attorneys' fees may include conditional fees for an appeal" provided there is "evidence of the reasonableness of fees

for appellate work to support the award." *Centerpoint Energy Inc. v. Assocd. Elec. & Gas Ins. Servs. Ltd*., No. CV 09-2107, 2011 WL 13134747, at *4 (S.D. Tex. Sept. 9, 2011). Notwithstanding the foregoing, "[f]ederal district courts in this circuit are hesitant to award such fees, because, typically, the Fifth Circuit will remand the appropriate fee determination once the claim for fees is ripe for adjudication." *Id.* This is especially true where the request for appellate fees "does not specify a number of hours or otherwise provide a basis for the amounts requested." *Id*. (denying plaintiffs request for appellate fees without prejudice on the grounds that plaintiffs failed to specify the number of hours they would likely spend on appeal or otherwise provide a basis for the court to determine the reasonableness of the amounts requested); *Primrose Operating Co. v. Nat'l Am. Ins. Co*., No. Civ. A. 5:02–CV–101–C, 2003 WL 21662829, at *6–7 (N.D. Tex. July 15, 2003) *aff'd in part, rev'd in part and remanded*, 382 F.3d 546 (5th Cir. 2004) (declining to award fees for an appeal before services were rendered and because the Fifth Circuit has concluded that they "have the power to make an award of services rendered in this court") (quoting *Heasley v. Comm'r of Internal Revenue*, 967 F.2d 116, 125 (5th Cir. 1992)).

Class Counsel summarily contend that based upon their knowledge of the case and the complex issues of Texas law, which requires the interpretation and application of municipal-hotel-occupancy tax ordinances, the amount of reasonable attorneys' fees to represent Plaintiffs in prosecuting an appeal and defending against Defendants' appeal to the Fifth Circuit is in the range of $300,000 to $350,000. (*See* Snider Decl. [#1242-12] ¶ 7.) However, other than this one conclusory paragraph in an affidavit, Class Counsel have not provided any evidence to support Plaintiffs' request for appellate fees. Class Counsel have not specified the number of hours they are likely to spend on appeal or otherwise provided the Court with a basis to determine the reasonableness of the amounts requested. Accordingly, Plaintiffs' request for appellate attorneys'

fees should be denied, without prejudice to a renewed request if Plaintiffs are successful on appeal.

### G. Non-taxable costs should be borne equally by the Plaintiffs.

Finally, in addition to the taxable costs Plaintiffs seek to recover from Defendants pursuant to 28 U.S.C. § 1920 [#1238], Class Counsel seek to recover $1,765,195.55 in expenses from the common fund. These expenses include photocopying charges, postage and messenger services, the fees of experts and consultants, the cost of travel to deposition locations and to San Antonio for trial, and the cost charged by court reporters. (*See* Wolens Decl. [#1242] ¶¶ 21-23; Sims Decl. [#1241-17] ¶¶13-15; Taylor Decl. Dec. [#1241-21] ¶¶ 14-16.)

"In a certified class action, the court may award . . . nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Under the common fund doctrine, "one who preserves or protects a common fund works for others as well as for himself, and the others so benefited should bear their just share of the expenses." *Hinton v. Fed. Nat. Mortg. Ass'n*, 137 F.3d 1350 (5th Cir. 1998). Accordingly, federal courts allow for reasonable litigation expenses to be recovered from the common fund. *See, e.g, In re Omnivision Techs., Inc*., 559 F. Supp. 2d 1036, 1048–49 (N.D. Cal. 2008) (granting plaintiffs' request to recover $560,489.90 from the settlement fund for expenses relating to photocopying, printing, postage and messenger services, court costs, legal research on Lexis and Westlaw, experts and consultants, and the costs of travel as "[a]ttorneys routinely bill clients for all of these expenses"); *Carrabba*, 191 F. Supp. 2d at 831-35 (awarding class action counsel reimbursement of $207,889.10 from class fund for expert expenses, copy costs, contract labor and courier fees, mediation fees, and travel expenses despite the fact that plaintiffs were statutorily entitled to (and did) shift their fees and costs); *In re Am. Integrity Sec. Litig*., No. CIV. A. 86-7133, 1989 WL 89316, at *13 (E.D. Pa. Aug. 8, 1989) ("In an

award from a common fund, as distinct from a statutory award to a 'prevailing party' pursuant to Fed. R. Civ. P. 54(d) or 28 U.S.C.A. § 1920 . . . reasonable litigation expenses may be reimbursed to counsel from the fund.")

Notwithstanding the above, when attorneys seek payment from the common fund, the Court must heavily scrutinize the fee request. *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 745 (S.D. Tex. 2008) (citing Report of the Third Circuit Task Force: Court Awarded Attorney Fees, 108 F.R.D. 237, 251 (1986)) (noting that in a common fund case, "[j]udicial scrutiny is necessary inasmuch as the fee will be paid out of the fund established by the litigation, in which the defendant no longer has any interest, and the plaintiff's attorney's financial interests conflict with those of the fund beneficiaries.")

The Court has reviewed the itemization of expenses incurred and costs assessed in connection with the prosecution of the case. While the aggregate amount is large, the expenses, costs and charges do not appear to be out-of-line or excessive, taking into consideration the nature, extent and length of the litigation and particularly in light of Plaintiffs' need to retain experts to conduct an extensive analysis of the transactional data produced by Defendants and the significant amount of depositions taken throughout the country.[41] Having reviewed these figures, the Court is of the opinion that these expenses (except those incurred for meals)[42] were reasonably and necessarily incurred in prosecuting this litigation. Accordingly, the Court finds that $1,750,858.57

_____

[41] For instance, Class Counsel incurred $1,031,844.00 in expert and consultant fees and $207,250.09 in travel expenses. (*See* Wolens Decl. ¶¶ 22-24; Sims Decl. ¶ 14; Taylor Decl. 14-16.)

[42] McKool Smith seeks reimbursement for $14,336.98 in meals but provides the Court with no legal basis to allow such a large discretionary expense.

in litigation expenses should be borne by the common fund.

## IV.    Conclusion and Recommendation

Having considered the parties' submissions on attorneys' fees, the undersigned recommends that the District Court **GRANT IN PART** Plaintiffs' Fee Application [#1241].  The District Court should award Plaintiffs attorneys' fees in the amount of $25,014,476.25 to be borne jointly and severally[43] by Defendants.  The District Court should also award Class Counsel $1,750,858.57 in non-taxable expenses to be borne equally by each Plaintiff.  Because the enhanced lodestar represents a reasonable award of attorneys' fees, the District Court should deny Class Counsel's request for further enhancement of the lodestar from the common fund.  Finally, the District Court should deny Plaintiffs' request for contingent appellate fees without prejudice to a renewed request provided Plaintiffs are successful on appeal.  All other relief not expressly granted herein should be denied.

## V.    Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  The party shall file

---

[43]*See, e.g., Walker*, 99 F.3d at 772 (noting that "[a] court may impose joint and several liability in setting fees," and finding that the district court did not abuse its discretion in ordering defendants to be jointly and severally liable for attorneys' fees because each party played a "substantial role" in the litigation, and the parties shared a joint defense and experts).

the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive, or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52, 106 S. Ct. 466, 472-73 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 17th day of April, 2017.


_____
ELIZABETH S. ("BETSY") CHESTNEY
U.S. MAGISTRATE JUDGE